Solomon Stoner, Charles B. Roberts, and Joseph Foutz, Executors of David Foutz *vs.* John S. Devilbiss.

*Pleading—Action against Executors—Statement of Cause of Action—Code, Art. 75, sec. 22, sub-sec. 96—Evidence—Opinion of Witness—Admissions to Remove bar of Limitations—Examination of Witnesses—Rebuttal—Prayers—Practice in the Court of Appeals.*

Sub-section 96 of section 22, Article 75 of the Code is in these words: "Causes of action may be stated against executors and administrators, in the same manner as if they were the original parties thereto, except that proper words must be used to show that the claim was against the deceased in his life-time." Under this provision a declaration, which stated that the plaintiff sued the executors of D. F. "for money payable *by the defendants' testator* to the plaintiff for goods bargained and sold by the plaintiff to the defendants' testator," was ruled good upon demurrer.

Although under said sub-section it is permissible to state the cause of action as if the executors were the original parties, if the pleader use words of explanation, showing that it was really a claim against the decedent in his life-time, it is not made obligatory so to state it.

In an action for services rendered a decedent in his life-time, the father of the plaintiff having testified to the fact of the rendition of services by his son to the deceased, the nature of which he did not know, and to certain declarations of the deceased supposed to indicate a recognition of indebtedness, was then asked to state the value of the services rendered. On objection it was Held:

That the opinion of the witness, though resting on a slender basis, was competent evidence for what it was worth.

Declarations of one executor that the plaintiff's claim for services rendered his testator ought to be paid, and of another that the claim was too large, but that plaintiff ought to have something, while inadmissible to establish the debt itself, are admissible for the removal of the statutory bar of limitations.

Stoner, *et al. vs.* Devilbiss.

In an action by a man of limited means against the executors of a wealthy person, to recover for services rendered during a period of twenty-five years, upon which nothing is shown to have been paid, it is competent for the defendants to show that the plaintiff, at a time when, as he alleged, the testator owed him a large sum, applied for, and obtained from the testator, for the use of the firm of which he was a member, a loan of less than half the amount he claimed to be due him, for which he gave the firm note, with interest.

But it is not competent to show that said firm was indebted to others besides the defendants' testator during the time said services were rendered.

The plaintiff's witness on re-examination was asked the following question: "You were asked what valuation you put on your son's services in the various years up to 1887; you have testified in chief that your son's services were worth $100 per year; and on cross-examination you said $50 for one year, and for the other years you put no valuation on them; now will you explain what you meant when you said that you put no valuation on his services for those years?" This question having been objected to and allowed, on appeal it was HELD:

1st. That what the witness had said in chief should have been omitted and not suggested to him by the question; but the whole matter of leading questions being within the discretion of the Court, error could not be assigned because of the allowance of said interrogatory, unless a substantial injury was done by such ruling in the exclusion of testimony a party might otherwise have enjoyed.

2nd. That in this case there was no substantial injury.

3rd. That the witness being on re-examination, was entitled to an explanation of what he had said on cross-examination, and to repeat that was proper.

Physical or mental infirmity of the deceased was not relied on as a reason for the plaintiff's employment. On the contrary, the plaintiff's main witness testified that the deceased was remarkably vigourous, mentally and physically. The defendants having offered to prove the good business qualifications of the deceased, on objection it was HELD:

That the evidence was inadmissible, as it was in rebuttal of nothing offered by the plaintiff.

A granted prayer cannot be reviewed on appeal, upon the ground that there was no evidence to support it, unless' such objection was raised in the Court below.

APPEAL from the Circuit Court for Carroll County.

The case is stated in the opinion of the Court.

*First* and *Second Exceptions* stated in the opinion of the Court.

*Third Exception.*—The plaintiff then asked the witness the following question: "Since the death of David Foutz, the testator, and after the 20th day of September, 1887, have you or not heard Joseph Foutz, one of the executors, say anything on the subject of this claim of the plaintiff, and if so, what have you heard him say, and when did he say it?" and the plaintiff stated to the Court that he, the plaintiff, offered said proof for the purpose of taking the case out of the Statute of Limitations, and not for the purpose of establishing the plaintiff's claim. The defendants objected, and the Court (SMITH and JONES, J.,) overruled the objection, and permitted the proof to be given for the purpose stated, and admitted the same solely as affecting the Statute of Limitations, and the bar thereof; and further, that the effect of said proof should be disposed of on prayers after all the proof in the case should be given. The defendants excepted.

*Fourth Exception.*—The defendants further offered to prove by said witness, that in the spring of 1886, the plaintiff, the son of the witness, made an application to the defendants' testator to borrow of him the sum of $1000.00, and did obtain from him a loan on April 1st, 1886, for $1000.00, for the use of the firm, composed of witness and plaintiff, and trading as C. S. Devilbiss & Son, and that plaintiff, in his own handwriting, executed a note in favor of the defendants'

Stoner, *et al. vs.* Devilbiss.

testator in the name of the firm of C. S. Devilbiss & Son, for said sum of one thousand dollars, and to prove that the note exhibited to witness was said note; but the plaintiff objected to the admissibility of said proof, and the Court sustained the objection, and refused to allow said proof to be given in evidence. The defendants excepted.

*Fifth Exception*—The plaintiff further proved by said witness, on cross-examination, that his son, the plaintiff, was not pecuniarily embarrassed prior to the death of defendants' testator, and that to the best of witness' knowledge he did not owe ten dollars outside of the firm; that the plaintiff owned no real estate, but owned personal property, household furniture worth about $600.00 or $700.00; that in 1884, 1885, and 1886, the stock of store goods in the firm's store was worth probably $7.000.00 or $8,000.00; that the firm was solvent at the time of the death of defendants' testator; that the indebtness of the firm in 1886, was about $1,000.00; that at the time of the death of defendants' testator, the firm's indebtness wat $2,000.00; and the defendants offered to prove to whom the said firm was so indebted; but the plaintiff objected to the admissibility of the proof offered, and the Court sustained the objection, and refused to permit the proof offered to be given in evidence. The defendants excepted.

*Sixth Exception*—And the defendants offered to prove by said witness that at the time of the death of the defendants' testator, the firm of C. S. Devilbiss & Son was indebted unto the said testator in the sum of $1,000.00 in addition to the sum named by the witness, as the firm's indebtness to himself; but the plaintiff objected to the admissibility of the proof offered, and the Court sustained the objection, and refused to allow the proof offered to be given in evidence. The defendants excepted.

*Seventh Exception*—The plaintiff's counsel on re-examination asked witness the following question: "On Saturday, Mr. Bond asked you what valuation you put on your son's services in the various years up to 1887; you have testified in chief that your son's services were worth $100.00 per year; and on cross-examination you said $50.00 for one year, and for the other years you put no valuation on them; now will you explain what you meant when you said that you put no valuation on his services for those years?" And the defendants, objected to the propounding of said question and to the admissibility of the proof offered in evidence; but the Court overruled the objection, and permitted said question to be asked, and the proof to be given in evidence. The defendants excepted.

*Eighth Exception*—The plaintiff offered to prove by Luther Hiteshew, that after the suit in this case had been brought, the said Joseph Foutz, one of the said executors, got into witness' wagon and asked him when the Devilbiss trial would come up; that witness told him he did not know, and remarked "Devilbiss' claim ought to be paid;" and the said Joseph Foutz replied: "Yes, it should be paid;" that witness then said, "If Mr. Foutz had got a professional man to do the same amount of work, that he would have been charged $200.00 per year instead of $100.00;" and Joseph Foutz replied: "Yes, they would;" and then said, "Men like Judge Foutz should pay bills of that kind;" and witness said, "Yes, if he did not pay them while living, the estate should be made to pay when dead;" and Joseph Foutz answer "Yes;" that this was all that was said, and that Joseph Foutz then jumped out of the wagon. And the plaintiff stated to the Court that he offered this proof for the sole purpose of removing the bar of the Statute of Limitations, and not for the purpose of establishing his, plaintiff's, claim; but the defendants objected to the admissibility of the

proof offered, and the Court overruled the objection, and admitted the proof for the purpose stated in the offer and for no other purpose. The defendants excepted.

*Ninth Exception*—The plaintiff offered to prove by William Babylon, that he lives in Uniontown, and knew the testator for fifty years before his death; that he heard Joseph Foutz tell the plaintiff several times in the store that he was foolish, that he did not make out his bill against the estate of testator, and said that he had himself done a great deal of work, and that he was going to bring an account himself against the estate, and that he would law the estate as long as he had a dollar, but what he would have his claim; that this was between Christmas, 1887, and March, 1888; and the plaintiff stated to the Court that he offered this proof for the sole purpose of removing the bar of the Statute of Limitations, and not for the purpose of establishing the plaintiff's claim; but the defendants objected to the admissibility of the proof offered, and the Court overruled the objection and admitted the proof for the purpose stated in the offer, and for no other purpose. The defendants excepted.

*Tenth Exception*—The plaintiff further offered to prove by said witness that he had a conversation with Solomon Stoner, one of said executors, and that said Stoner said to him, "Mr. Devilbiss has brought a bill against the estate;" that witness asked, "Is that so?" and said Stoner replied, "Yes, its $2,500.00, it's too much, though he ought to have something," and then said that the plaintiff had done some business for testator, but that it had only been for a few years; and the plaintiff stated to the Court that he offered this proof for the sole purpose of removing the bar of the Statute of Limitations, and not for the purpose of establishing the plaintiff's claim; but the defendants objected to the admissibility of the proof offered, and the Court over-

ruled the objection and admitted the proof for the purpose stated in the offer, and for no other purpose. The defendants excepted.

*Eleventh Exception*—The plaintiff offered to prove by William Hiteshew, that he heard Joseph Foutz, one of the defendants, tell plaintiff in his store, that he had done writing, and would have to bring in his bill, and thinks that said Joseph said that he ought to be paid; and the plaintiff stated to the Court that he offered this proof for the sole purpose of removing the bar of the Statute of Limitations, and not for the purpose of establishing the plaintiff's claim; but the defendants objected to the admissibility of the proof offered, and the Court overruled the objections, and admitted the proof for the purpose stated in the offer, and for no other purpose. The defendants excepted.

*Twelfth Exception*—The defendants proved by George R. Gehr, that he was a clerk in the First National Bank of Westminster, from 1868 until 1873; and that since 1875, he has been the cashier of said bank; that from 1875 he knew the defendants' testator intimately up to the time of his death; and offered to prove that said testator was posessed of excellent business qualifications, and that he was, up to the time of his death, both mentally and physically, capable of attending to and transacting his business affairs; but the plaintiff objected to the admissibility of the proof offered, and the Court sustained the objection and refused to permit the proof offered to be given in evidence. The defendants excepted.

*Thirteenth Exception*—The plaintiff offered the following prayer:

That if the jury believe from the evidence that the plaintiff rendered services to the defendants' testator, David Foutz, in his lifetime, as clerk or agent of said Foutz, in attending to the business of said Foutz,

and performed work for said Foutz, as clerk or agent as aforesaid, and at the instance and request of said Foutz, aided and assisted him in attending to his busness aforesaid, commencing in the year 1862, if the jury so find, and continuing during that year, and the years 1863, 1864, 1865 and 1866, if the jury so find, and again commenced on the 1st April, 1870, and continuing during that year, and the successive following years, up to the 1st March, 1887, if the jury so find; and if the jury shall believe that within three years before this suit brought, the said testator, Foutz, in his lifetime, acknowledged that plaintiff had rendered services aforesaid, and that he was indebted to the plaintiff therefor, or to that substance and effect, and that within the said three years before suit brought, testator declared that the plaintiff had done a great deal of work for him, the testator, and that he, plaintiff, must bring in a bill or account for the same against the estate of him, the testator, after his death, and if the jury shall believe that the said declarations of said testator had reference to and were meant and intended by said testator, in reference to the said services aforesaid, and work, and aid and assistance aforesaid, the jury can find a verdict for the plaintiff for such sum of money as they may believe to be a just compensation to the plaintiff for the services rendered, work done, and aid and assistance given by plaintiff to said David Foutz as aforesaid, if the jury find the same; and if the jury find for the plaintiff, they are at liberty to allow such interest, as under all the circumstances of the case the jury shall think proper and right to be allowed.

And the defendants offered the fourteen prayers following:

1. That the verdict of the jury must be for the defendants on the second plea.

2. That the jury are not at liberty to consider the declarations of one of the defendants, Joseph Foutz, as given in evidence in this cause, for any purpose in the case.

3. That the plaintiff is not entitled to recover for any services the jury may find he performed for the defendants' testator, unless they find that such services were rendered by the plaintiff for the defendant's testator, with the design and intention, at the time of so rendering the same, to charge said testator, and further find that there was an expectation on the part of the defendants' testator to pay for the same. ·

4. That although the jury may find that the plaintiff rendered services for the defendants' testator in his life-time, still the plaintiff is not entitled to recover for the same, if they find that such services were rendered more than three years before this suit brought, unless they further find a promise by the defendants' testator, within three years before the bringing of this suit, to pay for the said services.

5. That the jury, in making up their verdict, are not at liberty to consider any statement or statements offered in evidence as having been made by Joseph Foutz and Solomon Stoner, or either of them, two of the executors of the said David Foutz, deceased, for the purpose of establishing the plaintiff's alleged claim.

6. That if the jury find from the evidence in the cause that Joseph Foutz, one of the executors of David Foutz, deceased, claimed to have an account against the said deceased, at the time or times when he made the various statements offered in evidence, that then the jury are not at liberty to consider said statements of said executor, unless they find that said executor made said statements in good faith, and not for the

purpose of advancing his own personal interests in the collection of his said claim.

7. That if the jury shall find from the evidence in the cause that the plaintiff's claim for services extended through a period of twenty-five years, and shall further find that the plaintiff was, during said time, a man in moderate circumstances, and that in presenting his said claim to the Orphans' Court of Carroll County, he gave no credits thereon, and further, made no claim for interest due on said claim, that then the jury are at liberty, in connection with the other facts and circumstances offered in evidence, to find for the defendants on the issue joined on the third plea.

8. That unless the jury can find from the evidence in the cause the extent and character of the services alleged to have been performed by the plaintiff for the defendants' testator and the value thereof, that then it is not the province of the jury, and they are not at liberty, to speculate as to the extent and character of said alleged services, nor the possible value thereof.

9. That the testimony of Charles S. Devilbiss, plaintiff's father, given in this cause, does not prove or tend to prove the plaintiff's alleged claim, and the jury are not at liberty to consider the same in making up their verdict.

10. That the testimony of Dr. J. J. Weaver, given in this cause, does not prove or tend to prove the plaintiff's alleged claim, and the jury are not at liberty to consider the same in making up their verdict.

11. That the testimony of William Devilbiss, the plaintiff's son, given in this cause, does not prove or tend to prove the plaintiff's alleged claim, and the jury are not at liberty to consider the same in making up their verdict.

12. That the testimony of Oliver M. Hiteshew, given in this cause, does not prove or tend to prove the plain-

tiff's alleged claim, and the jury are not at liberty to consider the same in making up their verdict.

13. That the admission of Joseph Foutz, one of the executors, defendants, offered in evidence, are not legally sufficient to remove the bar of the Statute of Limitations for a greater period than three years before the time of the making of such admission.

14. That unless the jury find from the evidence that the plaintiff's claim sued on is established by other evidence than that of the defendants, executors, Solomon Stoner and Joseph Foutz, or either of them, they are not at liberty to consider the admissions of said Stoner and Foutz, executors, for the purpose of relieving said claim from the operation of the bar of the Statute of Limitations.

The Court granted the plaintiff's prayer. The defendants' third, fifth, sixth, eighth, thirteenth and fourteenth prayers were conceded. The Court rejected the defendants' first, second, seventh, ninth, tenth, eleventh and twelfth prayers, and granted the defendants' fourth prayer, as modified; and which said prayer, as modified, is as follows:

4. That although the jury may find that the plaintiff rendered services for the defendants' testator in his life-time, still the plaintiff is not entitled to recover for the same, if they find that such services were rendered more than three years before this suit brought, unless they further find a promise by the defendants' testator, within three years before the bringing of this suit, to pay for the said services, or that within three years before the bringing of this suit the defendants' testator acknowledged a subsisting indebtedness from him to the plaintiff.

The defendants excepted, and the verdict and judgment being rendered against them, appealed.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, and MCSHERRY, J.

*James A. C. Bond,* and *Charles B. Roberts,* for the appellants.

*Harry M. Clabaugh,* and *William P. Maulsby,* for the appellee.

IRVING, J., delivered the opinion of the Court.

The appellee sued the appellants, executors of David Foutz deceased, for services rendered the deceased, David Foutz, in his life-time from the year 1862 to 1887. The account exhibited and passed by the Orphans' Court is for $100 per annum for the period named, or $2,500. The declaration says the plaintiff sues the executors of David Foutz "for money payable by the defendants' testator to the plaintiff for goods bargained and sold by the plaintiff to the defendants' testator;" then follow counts for work done, and materials provided at the request of defendants' testator, for money lent, and the other money counts.

To this declaration a demurrer was entered, the sole ground of which is that the declaration sues "for money payable by the defendants' testator," and not for money payable by them as executors. We do not think this objection substantial. The 96th sub-section of section 22 of Article 75 of the Code of Public General Laws is in these words: "Causes of action may be stated against executors and administrators in the same manner as if they were the original parties thereto, except that proper words must be used to show that the claim was against the deceased in his life-time." No form for making such statement is given in the Code, as is given for other cases. It is permissible, therefore, to state the cause of action as if the

executors were the original parties, if the pleader uses words of explanation showing that it was really a claim against their decedent in his life-time; but it is not made obligatory to so state it. Here the cause of, action is set out as one existing against the deceased in his life-time, and it is done in the old way of making such statement. 2 *Chitty on Pleading*, 112. If a good cause of action existed against the appellants' testator in his lifetime, and the same was undischarged, the law threw upon them the obligation of paying it, and we think a claim against them as executors is sufficiently stated in this declaration. The demurrer was therefore properly overruled. In *Merryman vs. Rider*, 34 *Md.*, 98, the declaration was like the present declaration, only it omitted the words, "for money payable," which the Court said was fatal, and for that reason the *narr.* was held to be defective, and for none other.

Charles S. Devilbiss, the father of the plaintiff, having testified to certain services of his son for appellants' testator from 1862 to 1867, and from 1870 to 1887, and to certain declarations of the deceased supposed to indicate a recognition of indebtedness, such as "John I won't be able to pay you until I declare a dividend" or "make a dividend," and "you must bring in your bill against my estate," &c., he was asked, "do you know the value of the services which your son rendered to David Foutz from 1862 to 1867, and from 1870 to 1887, which you saw and knew of, and to which you have testified?" To this question the defendants excepted, and the same being overruled, it forms the subject of the first and second exceptions.

The appellants contend that as the witness said he did not know *what* they were doing when he saw the deceased and his son at the desk, and he was not told, because he said "his son was sworn to secrecy," it was

in the nature of things impossible for him to put a valuation on the services rendered. It is very certain he had a very slender basis on which to rest his judgment and estimate of the value of his son's services, and for that reason his opinion might be of little worth in the opinion of the jury, yet he had seen his son's time occupied with the testator's business, and with him at his solicitation; and his opinion of what that interruption of the son in his own business, and the consumption of his time with the defendants' testator, in and about some kind of business might be worth, was competent evidence for what it was worth. The objection to it was based on the ground that witness had not laid sufficient foundation for the expression of an opinion. His ignorance of the nature of the business in which the son was engaged for the defendants' testator, certainly abridged his ability to estimate accurately the worth of the services rendered, so that his opinion was not very valuable to the jury; still we think it could not be excluded altogether; and therefore we find no error in the first and second exceptions.

The third, eighth, ninth, tenth and eleventh exceptions are to the admission of certain declarations of two of the executors at different times and to different persons, which were offered for the removal of the statutory bar of limitations. They were offered for no other purpose, and were certainly not admissible to establish the claim; but for the *sole purpose* of removing the bar, the evidence was admissible. *McCann, et al. vs. Sloan and Caldwell*, 25 *Md.*, 575. We did not understand appellants as pressing these exceptions in this Court.

The fourth exception presents a question of more gravity, and one upon which the Circuit Court in our opinion erred. The plaintiff was presenting a claim

for twenty-five hundred dollars against a man shown
to be a man of means and a money lender, and fully
able to pay as the services were rendered.   The plain-
tiff was himself in business with his father, and their
business, which was of a mercantile character, was
conducted under the name of C. S. Devilbiss and Son.
The father, as witness, in support of his son's claim,
had testified to *frequent* visits of defendants' testator
to the store, during the period for which services are
claimed to have been rendered, and his having called
the son to the desk and occupied him with his business
for fifteen, twenty or thirty minutes at a time; but
what they were doing witness did not know; only
he knew once of his being twelve hours "writing
proxies;" and had heard defendants' testator say
once, "John, I'll owe you such a bill I don't know
that I will ever be able to pay you for your services."
On cross examination the defendants offered to prove
by the same witness that in the spring of 1886, the
plaintiff applied to the defendants' testator for a loan
of one thousand dollars, and on the first of April of
that year did obtain that sum from the testator, for
the use of the firm of which he was a member.   At
that time, if the plaintiff's claim, as made, is just, the
defendants' testator would have owed him twenty-four
hundred dollars.   The fact that he applied for a loan
of not half so much, and that the note of the firm was
executed to the defendants' testator therefor, drawing
interest, was certainly a circumstance throwing such
doubt upon the claim of the plaintiff, and creating
such a presumption that at that time the defendants'
testator did not owe the plaintiff any such sum as that
claimed; or even any sum, that the appellants were
entitled to the benefit of it.   The claim made is one
of a most remarkable and unusual character.   It is
made against a deceased person's estate, which is

large,—indeed so large, that the appellants would have the right to argue that such a claim as this would not be likely to be left outstanding and unpaid; and to us it seems very clear that they were entitled to the facts which they offered to prove, as tending to discredit the plaintiff's claim.   They had a right to evidence of *any circumstance* tending to show it was unlikely that the plaintiff could have a claim against the deceased, such as that preferred against his estate; and that he should apply for a loan and give a note for it when such a claim did exist, the jury might properly think was, improbable.   It had a tendency to show, most certainly, either that the plaintiff knew that the defendant's testator did not understand the services rendered to be other than gratuitous, or that they had been fully recompensed in some way, and that at that time there was nothing due.   When this application was made to borrow, if the lender had supposed himself in debt as charged, instead of lending, and *taking a note,* he most naturally would have been expected to say: "You have no need to borrow, I owe it to you, take it."   It seems clear to us that the learned Judges of the Circuit Court erred in excluding this evidence.   Coupled with it the evidence in the sixth exception ought to have been admitted; but there was no error in excluding that offered in the fifth exception.   In the fifth the offer was to show generally to whom the plaintiff and his father as partners were indebted, and was not confined to an offer to show indebtedness of the plaintiff's firm to the appellants' testator.

The seventh exception is to the allowance of this question to be put to the witness on re-examination: "On Saturday, Mr. Bond asked you what valuation you put on your son's services in the various years up to 1887.   You have testified in chief that your son's

services were worth $100 per year; and on cross examination you said $50 for one year and for the other years you put no valuation on them; now, will you explain what you meant when you said you put no valuation on his services for those years?"

Upon re-examination, Mr. Greenleaf says, in sec. 467 of vol. 1 of his work *on Evidence,* that it is admissible "to ask all questions which are proper to draw forth an explanation of the sense and meaning of the expressions of the witness used on cross examination, if they be in themselves doubtful." The object of this question was clearly to obtain an explanation of what the witness meant by saying he put no value on any services but for one year. The leading way in which it was done, by reciting what he had testified in chief, and contrasting it with what he said on cross examination, by way of showing the witness, who was certainly not an unwilling and hostile one, that he had gotten into difficulty and must work his way out, was the ground of objection. It is certainly questionable whether so suggestive a method of re-examination should have been permitted. We think what he had said in chief should have been omitted, and not suggested to him; but the authorities seem to say the whole matter of leading questions is within the discretion of the Court, and that error can not be assigned because of the allowance of such interrogatory. 1 *Greenl. Ev.,* sec. 435; 2 *Taylor's Evidence,* 1217; *Ohlsen vs. Terrero, L. R.,* 10 *Ch. App.,* 127; *Lawder vs. Lawder,* 5 *Ir. L. R., N. S.,* 27; *Walker vs. Dunspaugh,* 2 *N. Y.,* 170; *Wells vs. Jackson Iron Manuf. Company,* 48 *N. H.,* 491. There is an exception to the rule when a substantial injury is done by such ruling, in the exclusion of testimony a party might otherwise have enjoyed. *Moody vs. Rowell,* 17 *Pick.,* 498; *Gunter vs. Watson,* 4 *Jones (N. C.) L.,* 455. In this case we can see no

Stoner, *et al. vs.* Devilbiss.

substantial injury. The witness being on re-examination, according to the quotation from Mr. Greenleaf, he was entitled to an explanation of what he had said on cross examination, and to repeat *that* would appear proper.

The twelfth exception complains of the exclusion of what was offered by George R. Gehr, a clerk to the bank, as to the business qualifications of the appellants' testator. There would seem to be no error, as it was in rebuttal of nothing offered by the plaintiff. Physical or mental infirmity was not relied on as a reason for his employment. In fact, plaintiff's main witness testified that the deceased was remarkably vigorous, mentally and physically.

The thirteenth exception embraces the prayers granted and rejected. But one prayer on the part of the plaintiff was offered and granted. To this prayer the only objection found, as we understood it, was that the evidence did not support it. The exceptions show no such ground of objection below, and that reason is not available now against a granted prayer. Assuming there was evidence to support all its recitals, there would seem to be no error in granting it.

The first and second prayers of the defendants claim in effect that there is no evidence legally sufficient to remove the bar of the Statute of Limitations. We did not understand them to be pressed in this Court. But if they were not abandoned, and there was no defect in form, what we have said in disposing of the exceptions to the evidence on that subject would sustain the Court's action on them.

The ninth prayer was too general, and was properly rejected. It excluded Charles S. Devilbiss' evidence as to services rendered, and did not raise any question as to the sufficiency of his testimony on the question of value; which we suppose was really designed to be

presentèd.  The tenth prayer asked to exclude Dr. Weaver's testimony in effect.  It was *too general.*  He had testified to declarations of the deceased as to services of the plaintiff to the deceased, which were properly admitted in evidence.  His testimony certainly did not tend to establish the claim as to value,—but the prayer did not so confine it.  The same may be said as to the eleventh and twelth prayers.  They were too general also, and for like reasons.  We see no error in the modification of the defendants' fourth, nor in the rejection of the seventh.  Further comment on them we deem unnecessary.  The judgment must be reversed for the errors we have found in the fourth and sixth exceptions, and a new trial will be granted.

*Judgment reversed, and*
*new trial awarded.*

(Decided 10th January 1889.)