293 Md. 465 (1982)
445 A.2d 684
WILLIAM PRESTON WASHINGTON
v.
STATE OF MARYLAND
[No. 66, September Term, 1981.]
Court of Appeals of Maryland.
Decided May 27, 1982.
The cause was argued before MURPHY, C.J., and SMITH, DIGGES,[*] ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.
Louis P. Willemin, Assistant Public Defender, with whom was Alan H. Murrell, Public Defender, on the brief, for appellant.
Diane G. Goldsmith, Assistant Attorney General, with whom was Stephen H. Sachs, Attorney General, on the brief, for appellee.
ELDRIDGE, J., delivered the opinion of the Court.
Certiorari was granted in this criminal case to decide an issue previously unaddressed by this Court. That issue is whether evidence of threats made to a prosecution witness, who has been impeached by prior inconsistent statements, is admissible for the purpose of explaining the inconsistency, *467 when the threats were not linked to the defendant. In addition, two secondary issues are presented: whether a pretrial photographic identification should have been suppressed as the fruit of a tainted arrest because an informant's tip allegedly did not furnish probable cause under the test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); whether the evidence was sufficient to sustain a conviction on a weapons charge under Maryland Code (1957, 1982 Repl. Vol.), Art. 27, § 36 (a).
The defendant, William Preston Washington, was arrested for the murder of Anthony Lane. During the murder investigation an eyewitness, Bessie Williams, was discovered. Ms. Williams, when asked to identify Lane's assailant, selected from five photographs one of Washington which had been taken after his arrest. On the basis of this and other evidence, Washington was indicted for murder and for carrying a deadly weapon openly with intent to injure. At a pre-trial suppression hearing on the admissibility of the photographic identification, counsel for the defendant requested that Ms. Williams participate in an in-court identification. The request was made in hope of an unsuccessful identification that would cast doubt on the reliability of the previous photographic identification. Ms. Williams was unable to pick Washington from a group of five men.
The trial in the Criminal Court of Baltimore was held on the following day, and the State called Bessie Williams to testify. During direct examination she was once again asked to identify Lane's assailant, and she positively identified the defendant. On cross examination the defense brought out Ms. Williams's unsuccessful attempt at identification the previous day. The State, on redirect, asked her to explain the inconsistency. Over defense counsel's objections, Ms. Williams attributed her inability to identify Washington to fear invoked by anonymous "threat calls" that she had been getting at her job. The defense immediately moved for a mistrial, but the motion was denied. The trial court subsequently gave the jury the following cautionary instruction:

*468 "Good afternoon, ladies and gentlemen. You will recall, ladies and gentlemen, when we ended on Friday afternoon there was testimony by the witness Bessie Williams, with regard to the fact that she had been threatened and was scared, and that was the reason why there was a difference in her identification testimony on a prior occasion than what she testified to on the witness chair before you.
That testimony is not evidence of guilt on the part of the Defendant since there is no connection of those threats, if any, with the Defendant. So, that is not evidence of guilt of the Defendant.
The only reason for its admissibility is to determine the credibility of the witness Bessie Williams, whether she is believable, credible or truthful on the witness stand before you or another time. So, it could only be considered for that purpose."
Washington was convicted of second degree murder and carrying a weapon openly with intent to injure. He appealed to the Court of Special Appeals, and this Court issued a writ of certiorari prior to argument in that intermediate appellate court.

I.
The principal issue in this case concerns the admissibility of evidence of threats as it relates to a witness's credibility. A different issue, not presented here, arises when similar testimony is offered as substantive evidence on the issue of guilt.[1]
*469 When a witness is impeached by a prior inconsistent statement, evidence explaining the inconsistency is clearly admissible for the purpose of rehabilitating the witness's credibility. As Judge McWilliams pointed out for the Court in Virginia Freight v. Montgomery, 256 Md. 221, 226, 260 A.2d 59, 61 (1969), "a witness whose testimony has become suspect by a showing of prior inconsistent statements may rehabilitate himself ... by explaining the reasons for any such inconsistencies." Wigmore states the rule as follows:
"... the impeached witness may always endeavor to explain away the effect of the supposed inconsistency by relating whatever circumstances would naturally remove it. The contradictory statement indicates on its face that the witness has been of two minds on the subject, and therefore that there has been some defect of intelligence, honesty, or impartiality on his part; and it is conceivable that the inconsistency of the statements themselves may turn out to be superficial only, or that the error may have been based not on dishonesty or poor memory but upon a temporary misunderstanding. To this end it is both logical and just that the explanatory circumstances, if any, should be received."
3A Wigmore on Evidence § 1044 (Chadbourn Revision 1970)
See Wilson v. State, 261 Md. 551, 555-558, 276 A.2d 214 (1971); Reid v. Humphreys, 210 Md. 178, 186-187, 122 A.2d 756 (1956); Campbell v. State, 203 Md. 338, 344-345, 100 A.2d 798 (1953); Stoner v. Devilbiss, 70 Md. 144, 160-161, 16 A. 440 (1889).
Accordingly, a witness has been allowed to explain prior inconsistent statements by showing that they were induced by bribes, State v. Minton, 234 N.C. 716, 68 S.E.2d 844 (1952); that they were made while under sedation, Hodges v. Haverty, 115 Ga. App. 199, 154 S.E.2d 276 (1967); that they were made during a period of memory loss, State Auto. Mut. Ins. Co. v. Ropp, 7 Mich. App. 698, 153 N.W.2d 172 (1967); *470 that they were made in an attempt to remain uninvolved in the proceeding, Tucker v. State, 5 Md. App. 32, 245 A.2d 109 (1968); or that they were induced by threats from the defendant, State v. Charles, 525 S.W.2d 360 (Mo. App. 1975); Commonwealth v. Crow, 303 Pa. 91, 154 A. 283 (1931).
Pursuant to the rule permitting explanations of prior inconsistent statements, it is generally held that evidence of threats to a witness or fear on the part of a witness, in order to explain an inconsistency, is admissible in criminal cases for credibility rehabilitation purposes even if the threats or fear have not been linked to the defendant. E.g., United States v. Holladay, 566 F.2d 1018 (5th Cir.) cert. denied, 439 U.S. 831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978); United States v. Rivera, 513 F.2d 519 (2d Cir.) cert. denied, 423 U.S. 948, 96 S.Ct. 367, 46 L.Ed.2d 284 (1975); United States v. Cochran, 499 F.2d 380 (5th Cir.1974) cert. denied, 419 U.S. 1124, 95 S.Ct. 810, 42 L.Ed.2d 825 (1975); United States v. Pritchard, 458 F.2d 1036, 1039-1040 (7th Cir.) cert. denied, 407 U.S. 911, 92 S.Ct. 2434, 32 L.Ed.2d 685 (1972); United States v. Scandifia, 390 F.2d 244, 251-252 (2d Cir.1968), vacated & remanded on other grounds, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969); Benefield v. State, 140 Ga. App. 727, 731, 732, 232 S.E.2d 89 (1976); State v. May, 587 S.W.2d 331 (Mo. App. 1979); Commonwealth v. Carr, 436 Pa. 124, 259 A.2d 165 (1969); Villarreal v. State, 576 S.W.2d 51 (Tex.Cr.App. 1978) cert. denied, 444 U.S. 885, 100 S.Ct. 176, 62 L.Ed.2d 114 (1979).
Nevertheless, the defendant contends that this Court should reject the position taken throughout the country and hold that evidence of threats is not admissible for credibility rehabilitation purposes unless the threats are linked to the accused. It is argued that the admission of such evidence creates an unfair prejudice which outweighs the probative value of the evidence. We disagree.
The degree of prejudice caused by the evidence of threats is certainly less when the threats are not connected with the accused than when they are linked to him. As held in the above-cited cases, any unfair prejudice to the accused in this situation can be cured by his requesting a cautionary jury *471 instruction, such as given in the present case, telling the jury to consider the evidence only for the purpose of assessing the witness's credibility and not as evidence of guilt. The defendant assumes that the jury will ignore such an instruction. However, we have pointed out on several occasions that "our legal system necessarily proceeds upon the assumption that jurors will follow the trial judge's instructions." State v. Moulden, 292 Md. 666, 441 A.2d 699, 705 (1982), and cases there cited.
Furthermore, the anonymous source of the threats does not lessen the probative value of the evidence. As observed by the Missouri court in State v. May, supra, 587 S.W.2d at 336:
"The fact that defendant could not be linked to the threats, did not eradicate fear as the motive for the witness' inconsistent statements. The purpose of the testimony was not to show a consciousness of guilt but to explain the matters brought out on cross-examination."
Evidence of fear caused by anonymous threats obviously has very high probative value in explaining a prior inconsistent statement. Permitting one side to impeach a witness by showing a prior inconsistency, and not permitting the other side to explain the inconsistency by such probative evidence, does not comport with even-handed administration of justice. The comment by the Supreme Court of Arizona, in a case involving rehabilitation evidence just as prejudicial as the evidence here, is quite pertinent (State v. Farmer, 97 Ariz. 348, 353-354, 400 P.2d 580 (1965)):
"[T]he general rule is that the impeached witness may endeavor to explain away the effect of the supposed inconsistency by relating whatever circumstances would naturally remove it. Affronti v. United States, 145 F.2d 3 (8th Cir.1944); 3 Wigmore, Evidence §§ 1044, 1045 (3d ed. 1940). To preclude the State from rehabilitating one of its impeached witnesses by this mode of rehabilitation would allow the defendant an unwarranted *472 advantage in impeaching a witness with an assurance that his credibility would remain impaired."
Consequently, we hold that the evidence of anonymous threats was admissible for the limited purpose of explaining the prior inconsistent statement in an effort to rehabilitate the witness's credibility.

II.
As previously indicated, before trial the defendant had moved to suppress the evidence of Bessie Williams's photographic identification of him. The motion was denied, and the evidence of the photographic identification was admitted at trial. On this appeal, the defendant argues that evidence of the photographic identification should have been suppressed because the defendant's photograph was obtained as a result of an illegal arrest. See United States v. Crews, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980). The arrest was illegal, according to the defendant, because of a lack of probable cause under the standard of Aguilar v. Texas, supra, 378 U.S. 108, and Spinelli v. United States, supra, 393 U.S. 410.
Probable cause for Washington's arrest was allegedly established by an informant's tip. On March 31, 1980, a Baltimore City detective was notified that Anthony Hollie, who had just been arrested for an unrelated handgun offense, had information concerning the March 26th death of Anthony Lane. Hollie told the detective that the defendant Washington had approached him on March 26, 1980, and asked for some money to leave town because he had stabbed Lane. Hollie described the incident and further informed the detective that he had also heard about the stabbing from another source. Hollie's description of the incident matched descriptions given by two witnesses.
Even though he had told the detective that he was previously acquainted with the defendant, Hollie was shown five pictures from which he identified Washington. In return for *473 his help, the State agreed that Hollie's cooperation was to be brought to the attention of the court if he were sentenced on the handgun charge. However, the handgun charge was subsequently abandoned. On April 3, 1980, Hollie telephoned the Baltimore City detective and told him of Washington's whereabouts. On the basis of Hollie's information, and without a warrant, Washington was arrested.
When the basis for "probable cause" was information received from an informant, certain criteria must have been met. Included are the requirements that there was a sufficient basis for believing that the informant had knowledge of the event in question (the "basis of knowledge prong"), and a sufficient basis for believing that the informant was telling the truth (the "veracity prong"). Aguilar v. Texas, supra; Spinelli v. United States, supra; Merrick v. State, 283 Md. 1, 389 A.2d 328 (1977); Waugh v. State, 275 Md. 22, 32-33, 338 A.2d 268 (1975); Murray v. State, 236 Md. 375, 203 A.2d 908 (1964), cert. denied 381 U.S. 940, 85 S.Ct. 1774, 14 L.Ed.2d 703 (1965); Stanley v. State, 19 Md. App. 507, 313 A.2d 847 (1974).
The defendant does not dispute that the "basis of knowledge prong" was satisfied in this case; his only concern is with the "veracity prong." In order to meet the veracity prong, sufficient underlying circumstances must exist from which the officer could conclude that the informant is credible or his information reliable. Aguilar, supra, 378 U.S. at 114, 84 S.Ct. at 15.
Standing alone, Hollie's credibility may have been questionable. Because he had been arrested, Hollie had much to gain by revealing the information. In addition, Hollie had had no previous dealings with the police that would have tended to remove any doubt concerning his credibility and establish a propensity for telling the truth. See McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).
The veracity prong, however, can be satisfied by independent sources which substantiate an informant's tip. By independently corroborating a portion of an informant's story, the credibility of the remaining unverified portion is *474 enhanced because there then exists a basis for believing the informant. Spinelli, supra, 393 U.S. at 415; Stanley v. State, supra, 19 Md. App. at 529. See Edwardsen v. State, 243 Md. 131, 220 A.2d 547 (1966). Given the facts of this case, sufficient corroboration of Hollie's information existed to satisfy the veracity prong. Hollie, when questioned by the police about the incident, gave the same story as that received from other witnesses: the incident occurred in the 1500 and 1600 blocks of Pennsylvania Avenue, and involved the deceased striking the assailant with a brick, after which the assailant gave chase, overtook the deceased when he fell, and repeatedly stabbed him in the chest. Such independent corroboration of a significant part of Hollie's story justified the conclusion that Hollie was telling the truth.[2]
Since Washington's arrest was based on probable cause and was therefore lawful, the trial court correctly denied the motion to suppress the photographic identification evidence resulting from the arrest.

III.
Washington was also convicted under Code (1957, 1982 Repl. Vol.) Art. 27, § 36 (a), which states in pertinent part:
"Every person who shall wear or carry any dirk knife, bowie knife, switchblade knife ... (penknives without switchblade and handguns, excepted) ... and any person who shall wear or carry any such weapon .. . openly with the intent or purpose of *475 injuring any person in any unlawful manner, shall be guilty...."
Washington contends that his conviction for carrying a deadly weapon openly with intent to injure should be reversed because the State failed to prove that the knife used in the stabbing was not a penknife, which is expressly excepted from the above-quoted statute.
In Mackall v. State, 283 Md. 100, 387 A.2d 762 (1978), this Court held that in a prosecution under Art. 27, § 36 (a), the State has the burden of proving beyond a reasonable doubt that the knife was not a penknife without a switchblade. We stated (283 Md. at 111):
"The evidence here did not establish that the knife carried by Mackall was a dirk knife, a bowie knife, or a switchblade knife, the three types of knives expressly proscribed by the statute. Therefore, although the evidence was sufficient to show that the knife was a dangerous and deadly weapon by the use to which it was put, Bennett and Flynn, 237 Md. at 214-216, the State had the further burden of showing that it was not a penknife without switchblade in order to prove the corpus delicti of the crime charged. Not having done so, the evidence adduced was not legally sufficient to sustain the conviction, and the judgment must be reversed."
In the case at bar, the knife was not introduced into evidence, and the testimony described the knife only as a "long silver knife" and a "sharp pointed object." There was a total absence of evidence tending to show that the knife was not a penknife. Accordingly, the conviction on the charge under § 36 (a) must be reversed.
Conviction and sentence for murder affirmed.
Conviction and sentence for carrying a weapon openly with intent to injure reversed.
Petitioner to pay costs.
NOTES
[*] Reporter's Note: Digges, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.
[1] Evidence of threats to a witness, or attempts to induce a witness not to testify or to testify falsely, is generally admissible as substantive evidence of guilt when the threats or attempts can be linked to the defendant and not admissible as substantive evidence absent such linkage. See Saunders v. State, 28 Md. App. 455, 459, 346 A.2d 448 (1975); State v. Carter, 16 Ariz. App. 380, 493 P.2d 926 (1972); People v. Slocum, 52 Cal. App.3d 867, 125 Cal. Rptr. 442 (1975), cert. denied, 426 U.S. 924, 96 S.Ct. 2635, 49 L.Ed.2d 379 (1976); People v. Bloom, 370 Ill. 144, 18 N.E.2d 448 (1938); State v. Caliendo, 136 Me. 169, 4 A.2d 837 (1939); State v. Day, 22 Or. 160, 29 P. 352 (1892).
[2] The defendant argues that Hollie's receiving word of the incident from another source destroys the effect of independent corroboration because Hollie could have learned details from someone other than the defendant. In support he cites Commonwealth v. Stokes, 480 Pa. 38, 389 A.2d 74 (1978). Stokes, however, is inapposite. In that case, the informant was the only source of all of the information which the police possessed. The Stokes case holds only that, when an informant has passed information to a third party, the third party's relaying the information to the police does not constitute corroboration of the informant's story. 480 Pa. at 48, 289 A.2d at 79. Unlike Stokes in which the informant was the only source of information, in the present case the police had sufficient information from other sources to corroborate Hollie's statement. The fact that Hollie also received information from another source does not detract from the corroboration supplied by other witnesses.