560 A.2d 605

Tonya BROWN

v.

STATE of Maryland.

No. 1835, Sept. Term, 1988.

Court of Special Appeals of Maryland.

July 7, 1989.

188

Clarence W. Sharp, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Sarah E. Page, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Stuart O. Simms, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Submitted before ALPERT, ROBERT M. BELL and FISCHER, JJ.

FISCHER, Judge.

After a jury trial in the Circuit Court for Baltimore City, Tonya Brown was convicted of assault with intent to murder, attempted first degree murder, use of a handgun in the commission of a felony or crime of violence, and conspiracy to commit first degree murder. On the attempted murder and conspiracy counts, the appellant was sentenced to concurrent life terms with all but five years suspended in favor of five years probation commencing upon release. For the handgun violation, appellant was committed to the Division of Correction for five years, concurrent to the life sentences. With respect to the assault with intent to murder

conviction, appellant received five years imprisonment, consecutive to the above-mentioned terms. The consecutive sentence was suspended, however, in favor of a five year probationary period commencing immediately. As a condition of probation, appellant was to give a full account of the events surrounding these crimes until she passed a polygraph test, at which time she must recount her story in court. This condition was required to be satisfied between eighteen and thirty months from the November 2, 1988 sentencing date.

Appellant poses five allegations of error for our review. First, she claims the court improperly called two individuals as its witnesses. Appellant next contends that the trial judge's intervention during the questioning of the witnesses effected a denial of due process. Third, Brown challenges the admissibility of a police officer's testimony regarding alleged threats received by a witness and the witness' family. Appellant's fourth assignment of error concerns the court's refusal to merge the convictions for attempted murder and assault with intent to murder. Last, Brown claims the polygraph requirement was an illegal condition of probation.

This drama unfolded on the evening of October 21, 1987 as Charles Massey spoke with the appellant outside his girlfriend's Dallas Street home. Massey inquired about the condition of appellant's brother who was shot the previous day and attempted to dispel the rumors linking him to the shooting. During this conversation, Massey was himself shot by an unidentified gunman. As a result, Massey is unable to walk.

In statements to the police, Massey said that just before he was shot, appellant pointed to him, stepped aside, and said, "Bust him," meaning "shoot him." Massey also indicated that appellant and the gunman ran off together. At trial, however, Massey recanted this version, claiming that after more thought he realized appellant would not have "set [him] up" as retaliation for her brother's injury.

## I. COURT'S WITNESSES

■ Appellant claims the judge improperly called Massey and his girlfriend, Tijuana Cook, as court witnesses. Like Massey, Cook originally told police that appellant pointed to Massey just before he was shot and that, afterward, appellant and the gunman ran into an alley together. Cook subsequently testified that appellant was merely gesturing as she spoke with Massey and that appellant and the gunman ran in the same direction, but not together.

■ When neither the prosecution nor the defense can vouch for the veracity of an individual who appears to possess material evidence, it is within the sound discretion of the trial judge to call that person as the court's witness. *Patterson v. State*, 275 Md. 563, 342 A.2d 660 (1975).[1] Before so doing, several factors are considered:

> (1) the prosecutor's inability to vouch for the veracity or integrity of the witness, (2) the close relationship between the witness and the defendant; (3) the existence of contradictory or inconsistent statements by the witness; (4) the hostility of the witness; and (5) the necessity for the testimony; i.e., where the witness possesses material evidence.

*Scarborough v. State*, 50 Md.App. 276, 282, 437 A.2d 672 (1981), *cert. denied*, 292 Md. 639 (1982).

Appellant contends that the court inadequately considered these factors. We disagree. The State requested the judge to call three persons as court's witnesses: Massey, Cook, and Toni Kavanaugh, a friend of Cook's. These individuals, the State argued, possessed relevant and material information but made inconsistent statements. The judge agreed to call Massey, the victim, and Cook, an

---

1. Maryland Rule 1–501, effective January 1, 1989, provides that the credibility of a witness may be attacked by any party, including the party calling the witness. This Rule eliminates the common law "voucher" rule and obviates the need for court's witnesses. As appellant's trial was conducted in June, 1988, Rule 1–501 is inapplicable to the case *sub judice.*

eyewitness, as court's witnesses because both could provide material testimony. He declined, however, to call Kavanaugh. As Kavanaugh did not observe the shooting, her testimony was not necessary to avoid a miscarriage of justice.

We perceive no abuse of discretion. The court was satisfied that Massey and Cook were hostile witnesses with essential information. Despite appellant's contention, the fact that these witnesses were not closely related to the appellant is of no consequence. The relationship between the witnesses and the appellant is only one factor to be considered and is not necessarily dispositive of this issue. We therefore decline to disturb the trial judge's ruling.

## II. JUDICIAL CONDUCT

Appellant's second assignment of error concerns the judge's conduct. Appellant argues that the judge's questioning of certain witnesses was improper and that there were "a number of occasions where the trial judge's inquiry went beyond impartiality, assisted the prosecution directly and demonstrated prejudicial unfairness to appellant." In *Madison v. State*, 200 Md. 1, 87 A.2d 593 (1952), the Court of Appeals affirmed the right of the trial judge to intervene in the questioning of witnesses. This is to ensure that the facts necessary for a just decision are fully developed. *King v. State*, 14 Md.App. 385, 393, 287 A.2d 52 (1972); *Jefferies v. State*, 5 Md.App. 630, 632, 248 A.2d 807 (1969).

After reviewing the record, we are convinced that Judge Moylan's statements in *Pearlstein v. State*, 76 Md.App. 507, 515, 547 A.2d 645 (1988), apply equally in the case *sub judice:*

[The court] did not, as in *Vandegrift* [*v. State*, 237 Md. 305, 206 A.2d 250 (1965) ], warn the witness of the penalties of pejury or, as in *Brown v. State*, 220 Md. 29 [150 A.2d 895] (1959), phrase his questions in a sarcastic fashion. The questioning rather strikes us as a legit-

imate effort to sharpen the issues and clarify difficult points for the jury.

Here, the court sought to elicit essential information. Certainly, the most probing questions are always the most difficult. No doubt, appellant would prefer that some go unasked. Appellant's objection focuses on the testimony of Toni Kavanaugh. Kavanaugh, as the court observed, appeared hostile to the prosecutor, and, in such cases, it is more likely that the witness will respond to the questions of a neutral party, *i.e.*, the judge. In this regard, the court succeeded by eliciting some important information from Kavanaugh.

Appellant also claims the court improperly admonished defense counsel. After reviewing the record, we conclude that the judge's comments were intended to maintain control of the proceedings. In highly emotional settings, this is often difficult. While the judge may have employed another approach, we do not believe his few comments to counsel were wrought with prejudicial unfairness.

## III. EVIDENCE OF THREATS

Appellant next contends that the court erroneously admitted evidence of threats received by Tijuana Cook. Officer Susan Young described a change in Cook's attitude and statements. She noted that Cook initially gave clear, definitive statements, but, as the trial approached, Cook became hostile, uncooperative and unsure. This was especially evident in their conversation prior to Cook's testimony. Regarding this conversation, the State inquired:

Q. What if anything did [Cook] indicate to you was her reason for being unsure?

A. She was afraid of possible reprisal. She—her son had been blocked—

[Defense Counsel]: Objection.

The Court: Overruled.

[Officer Young]: Her son had been stopped from walking up the street by the defendant's brother after this incident.

[Defense Counsel]: Objection, move to strike.

The Court: Overruled.

[Officer Young]: Her windows in the back of her house had been broken out. Something had been thrown through the windows.

[Defense Counsel]: Objection.

The Court: Overruled.

As the Court of Appeals noted in *Washington v. State*, 293 Md. 465, 468 n. 1, 445 A.2d 684 (1982):

> Evidence of threats to a witness, or attempts to induce a witness not to testify or to testify falsely, is generally admissible as substantive evidence of guilt when the threats or attempts can be linked to the defendant and not admissible as substantive evidence absent such linkage. [Citations omitted.]

That issue is distinct from the one currently before us. We are asked to determine the admissibility of evidence of threats as it relates to a witness' credibility. To answer this question, we again turn to *Washington*, 293 Md. at 470, 445 A.2d 684, which states:

> Pursuant to the rule permitting explanations of prior inconsistent statements, it is generally held that evidence of threats to a witness or fear on the part of a witness, in order to explain an inconsistency, is admissible in criminal cases for credibility rehabilitation purposes even if the threats or fear have not been linked to the defendant. [Citations omitted.]

We conclude, therefore, that the trial judge properly admitted evidence regarding the threats received by Cook. This information was admitted not to show appellant's guilt, but for its effect on Cook's state of mind. The court correctly ruled that this evidence was not hearsay, as it was not offered for the truth of the matter asserted therein. For these reasons, the testimony regarding threats against

Cook and her family was admissible for the limited purpose of explaining Cook's prior inconsistent statements in an effort to rehabilitate her credibility.

## IV. MERGER

██ Despite the holding in *State v. Holmes*, 310 Md. 260, 528 A.2d 1279 (1987), appellant claims her convictions for attempted murder in the first degree and assault with intent to murder merge under the required evidence test. This is true, appellant argues, because her role in these offenses was that of a principal in the second degree. We decline appellant's invitation to "re-evaluate *Holmes* under the circumstances of this case."

The "required evidence test" is used to determine whether two offenses are the same for purposes of the common law and constitutional prohibitions against double jeopardy. *Holmes*, 310 Md. at 267, 528 A.2d 1279. Applying this test to attempted first degree murder and assault with intent to murder, the Court of Appeals concluded:

> Attempted murder in the first degree requires a willful, deliberate, and premeditated intent to kill, while assault with intent to murder does not. Assault with intent to murder requires an assault, while attempted murder in the first degree does not. Accordingly, these crimes do not merge under the required evidence test....

*Id.* at 272, 528 A.2d 1279.

Regardless of the nature of appellant's criminal involvement, the elements of these offenses are unchanged. As Brown's convictions each require an element the other does not, they do not merge.

## V. PROBATION

Appellant's last assignment of error concerns the probationary period on the assault with intent to murder conviction. As a condition of probation, appellant is required to pass a polygraph test in which she gives a full account of these offenses. Appellant is then to repeat her story in

court. One of the purposes of this condition is to have appellant identify the gunman.

While appellant made no objection to this requirement, she has not waived her right to appeal. "[A] defendant who fails to object to the imposition of an illegal sentence does not waive forever his right to challenge that sentence." *Walczak v. State*, 302 Md. 422, 427, 488 A.2d 949 (1985). In addition, Maryland Rule 4–345 provides, "The court may correct an illegal sentence at any time." *See also Stone v. State*, 43 Md.App. 329, 405 A.2d 345 (1979) (for review of condition of probation, appellant may invoke Rule 4–345 or post conviction procedures). We will, therefore, examine the validity of appellant's probationary status.

Brown's attack is twofold. First, appellant contends that her probation was impermissibly commenced on the date of sentencing rather than upon her release from confinement. Second, appellant claims the polygraph requirement forces her to abandon the Fifth Amendment privilege against self incrimination. Both of these issues are question of first impression in Maryland.

■ With respect to commencement of the probationary period, Article 27 § 641A(a) provides:

> Upon entering a judgment of conviction, the court having jurisdiction may suspend the imposition or execution of sentence and place the defendant on probation upon such terms and conditions as the court deems proper. The court may impose a sentence for a specified period and provide that a lesser period be served in confinement, suspend the remainder of the sentence and grant probation for a period longer than the sentence but not in excess of 5 years. However, if the defendant consents in writing, the court may grant probation in excess of 5 years, but only for purposes of making restitution.

Subsection (c) further states:

> If a sentence of imprisonment is imposed, a portion of it is suspended, and the defendant is placed on probation,

the court may impose as a condition of probation that the probation commence on the date the defendant is actually released from imprisonment.

In *Matthews v. State*, 304 Md. 281, 285, 498 A.2d 655 (1985), the Court of Appeals interpreted this statute and found "from a review of the recent legislative history of the section that the General Assembly did not intend to grant authority for the commencement of a probationary period prior to the actual release of a defendant from imprisonment." The Court concluded "that a trial judge does not have authority to order a period of probation to begin during the time a defendant is actually serving a prison sentence for the same offense." *Id.* at 284, 498 A.2d 655. The State would have us infer from *Matthews* that probation may begin while a defendant is imprisoned for a different offense. We decline to do so.

While we are not faced with a "split sentence" [2] situation as was the Court in *Matthews*, we nonetheless arrive at the same result. As Judge Cole penned in *Turner v. State*, 307 Md. 618, 624, 516 A.2d 579 (1986):

> Probation is an act of grace. *Kaylor v. State*, 285 Md. 66, 75, 400 A.2d 419 (1979). It permits a court, in its discretion, to suspend what would be the normal penalty for violation of the criminal law in favor of conditions which, if performed, tend to promote the rehabilitation of the criminal as well as the welfare of society. *Scott v. State*, 238 Md. 265, 275, 208 A.2d 575 (1965). In other words, in an appropriate case, the criminal defendant is given a second chance—an opportunity to show that by performing the conditions of probation he can function as a law-abiding and useful member of society. If he faithfully performs those conditions, he is spared the more drastic punishment that generally follows a violation of the criminal law.

---

**2.** An example of a split sentence is imposition of ten years imprisonment with five years suspended in favor of five years probation.

A probationary period commencing while a defendant is incarcerated, whether incarcerated on the same or a different offense, fails to achieve these goals. Probation while imprisoned is, in effect, no second-chance test of an individual's rehabilitative potential. Confinement hardly reflects a person's ability to function as a law-abiding and useful member of society. Further, it may be impossible to satisfy special conditions of probation while imprisoned. We, therefore, conclude that the appellant's probation should commence upon her release from incarceration.

We also note that the probationary terms assigned here total ten years, five years commencing immediately and five years commencing upon release. By so structuring probation, the trial court exceeded the five year limitation established in Article 27, § 641A(a). While this finding necessitates remand of the instant case, our inquiry does not end here. We must next determine the validity of the special condition imposed upon appellant.

As discussed above, appellant is to recount the facts surrounding these offenses until she passes a polygraph examination. At that time, she must repeat her statements in court. Brown's challenge to this special condition is well founded.

 A judge has very broad discretion when imposing sentences and conditions of probation. Article 27, § 639(a) authorizes the court to suspend sentences and establish such conditions "as may be deemed proper." That discretion must, however, be exercised within the limits of applicable laws and practices. *Haynes v. State,* 26 Md.App. 43, 51, 337 A.2d 130 (1975). It is imperative that conditions of probation be reasonable and have a rational basis.

> They must not be the product of arbitrariness or capriciousness. Moreover, the conditions imposed must be clear, definite and capable of being properly comprehended and understood not only by the individual upon whom they are imposed but by those responsible for their enforcement.

*Watson v. State,* 17 Md.App. 263, 274, 301 A.2d 26, *cert. denied,* 268 Md. 754 (1973).

Before addressing any Fifth Amendment implications, we must first resolve the threshold question: whether there is a rational basis for the polygraph requirement. While justice would be served by disclosure of the gunman's identity, is the use of a polygraph examination a rational means to achieve this goal? It is well settled that polygraph results, constantly plagued by reliability problems, are inadmissible in Maryland. *Guesfeird v. State,* 300 Md. 653, 480 A.2d 800 (1984).

Quoting Highleyman, *The Deceptive Certainty of the "Lie Detector",* 10 Hastings L.J. 47, 63 (1985), the Court of Appeals has noted:

'[T]he use of lie detector evidence invites confusion between (1) the reliability of the objective physiological facts which are recorded by the polygraph, and (2) the reliability of the subjective inferences of truth or deception which are drawn from those facts by the examiner.'

*Reed v. State,* 283 Md. 374, 385 n. 8, 391 A.2d 364 (1978).

This assessment was echoed in *Kelley v. State,* 288 Md. 298, 302, 418 A.2d 217 (1980), where the Court opined:

We conclude, therefore, that, until such time as the reliability of this particular type of scientific testing has been appropriately established to the satisfaction of this Court, testimony which directly or indirectly conveys the results of [polygraph] tests should not be admitted. To hold otherwise would permit the use against the defendant of the results of such scientific testing prior to a scientific judgment, acceptable to us, as to the reliability of the test itself.

In the instant case, the appellant is required to undergo polygraph examinations until such time as she passes. She is then to repeat her "passing" account in court. There is no assurance that the "passing" version is the truth. In fact, evaluations of the polygraph test belie such a conclusion. Maryland courts, for that very reason, have repeated-

200

ly denounced the usefulness of polygraph examinations in eliciting accurate information.

At this time, no new data has surfaced which would cause us to reconsider our position. We conclude, therefore, that there exists no rational basis for the polygraph requirement. In light of this finding, we need not reach appellant's constitutional challenge. Pursuant to Md.Cts. & Jud. Proc.Code Ann. § 12–702, we remand for imposition of a sentence consistent with this opinion.

JUDGMENT VACATED; REMANDED FOR RESENTENCING CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY MAYOR AND CITY COUNCIL OF BALTIMORE.