STATE OF CONNECTICUT *v.* MELVIN BROKAW

COTTER, C. J., BOGDANSKI, PETERS, PARSKEY and D. SHEA, JS.

Argued May 13—decision released July 8, 1980

*Richard Emanuel,* assistant public defender, with whom, on the brief, were *Jerrold H. Barnett,* public defender, and *Joette K. Rubin,* assistant public defender, for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Richard Maloney,* assistant state's attorney, for the appellee (state).

Parskey, J. The defendant was found guilty by a jury of the crime of robbery in the first degree in violation of § 53a-134 (a) of the General Statutes. The defendant has appealed. We reverse.

The facts which the jury might reasonably have found from the evidence are not in dispute: On March 26, 1976, at about 9:30 p.m., Merrill Fichman was robbed in front of his store, the Meatown Market, located on New Britain Avenue in Plainville. The occurrence took place in the parking area where Fichman was jumped upon and knocked to the ground by two men as he was unlocking a door of his car. In the course of the event, Fichman saw one of the men display a gun, and two wallets containing $150 were taken from Fichman's person. Fichman also described a third party's involvement. While he was lying on the ground, a car drove up and parked in front of him to prevent any observation from the street. When the robbers left the scene, they left in that car.

Fichman saw the two men only momentarily before they knocked him down. He estimated the time as thirty seconds, and thereafter, he was unable to look up. The faces of both men were covered by what Fichman described as black ski masks, and he recalled that one of them wore an orange hat. Consequently, Fichman's description of them to the police was limited to characteristics such as age, voice, height and weight. Shortly after the incident, Fichman had described both of them as men in their early twenties with heights of five feet nine inches and weights of approximately 185 pounds.

At the trial, Fichman admitted that the description he had given did not resemble the defendant,

Brokaw, at all. With the exception of a similarity in height, the description did not fit the codefendant, Estep, either.

To establish the involvement of Brokaw and Estep, the state relied on the testimony of Raymond Duffy, an alleged accomplice, who identified himself as the driver of the car which had been parked between Fichman and the street when the robbery was in progress.

Duffy's testimony contained all the particulars of the robbery which only a self-confessed participant could supply. He acknowledged prior acquaintance with Brokaw and Estep, and identified them as the robbers. He described their face masks as black panty hose which had been supplied by Brokaw and the orange hat as one provided by himself. He stated that the car he had driven was one stolen by them in Waterbury and that they had gained access to it by breaking a back window. He told about the trip from Waterbury to Plainville for which two cars were used. The stolen one, driven by himself, was followed by Estep's car, in which Brokaw and Estep rode. He stated that Estep's car was left in the parking lot of a nearby Holiday Inn and that the stolen vehicle was abandoned there afterward. In the commission of the robbery, he said that both men wore gloves and that Brokaw carried a small revolver and Estep a kitchen knife. He also said when they left the Holiday Inn, after the robbery, that the gloves and nylons were discarded at various points along the road. He described the route as the street which led into the road to Bristol.

After Duffy, the state's next witness was Detective Aivaz, who testified to activities of the Plain-

ville police on March 31, 1976, five days after the robbery. In response to a call received on that date from the Holiday Inn about a car which had been in the motel parking lot for several days, the police located the stolen car with the "smashed out" rear window. On the dashboard of the car, a wooden-handled kitchen knife was found. On the same day, about 150 yards from the Holiday Inn, the police, when looking over an embankment on Crooked Street, discovered one pair of brown work gloves and two cutoff black nylon stockings. Crooked Street leads to the main road in Plainville which eventually takes one to New Britain or Bristol.

The issue which is dispositive of this appeal involves the testimony of Duffy, an alleged accomplice, regarding anonymous threats made to his wife. Duffy had testified on direct examination that while he was confined in Litchfield correctional center he was visited by a state trooper who advised him that his wife had received threatening telephone calls.[1] He was then asked who he thought might have threatened her and, over objection that the answer would be conjectural, was permitted to state his belief that it was the defendant. He testified that after he confirmed with his wife that threats had been made, the trooper "came back and I told him I wanted to give everything up that I know, get it cleaned up, do what time I had to do and get the hell out of this state, get away from these people . . . ."

In *State* v. *Sorbo,* 174 Conn. 253, 386 A.2d 221 (1978), decided after the trial in this case, we held

---

[1] It does not appear that any objection was raised to this testimony as hearsay. In any event, the making of the threat was also confirmed in a conversation between Duffy and his wife.

that threats made against a witness in a criminal prosecution are not admissible against a defendant unless such threats are made with the defendant's knowledge, consent or authorization. Id., 256. See 1 Wharton, Criminal Evidence (13th Ed.) § 217. We there indicated that when a connection is shown between the threats and the defendant they are admissible on the theory either that such conduct by the accused is inconsistent with his claim of innocence or that it exhibits a consciousness of guilt. *State* v. *Sorbo,* supra. The trial court must also consider whether the prejudicial tendency of such evidence outweighs its probative value. *State* v. *Holliday,* 159 Conn. 169, 173, 268 A.2d 368 (1970).

The state claims that this case is distinguishable from *Sorbo* because the evidence was offered to counter the reasonably anticipated inference that Duffy was implicating the defendant for his own selfish motive of currying favor with the police. "While the testimony in question strengthened the credibility of the witness — a witness who implicated the defendant — it also served to provide a substantial basis from which an inference, unfavorable to the defendant, could be drawn." *State* v. *Sorbo,* supra, 257. Under *Sorbo,* the evidentiary ruling in question was erroneous.

The error cannot be held a harmless one. See *State* v. *Sorbo,* supra. The victim in this case could not identify the defendant as one of the robbers. Duffy's testimony was therefore crucial to the state's case. Under these circumstances, the court's error in permitting Duffy to testify regarding his purely speculative, subjective belief that the threats to his wife came from the defendant was both prejudicial and harmful.

In view of the fact that the other errors claimed are unlikely to recur on a retrial, we need not address them.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.