Terry Eugene COLEMAN, Appellant,

v.

The STATE of Texas, Appellee.

No. A14–81–568–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

April 15, 1982.

Rehearing Denied May 13, 1982.

Charles Rice Young, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Houston, for appellee.

Before J. CURTISS BROWN, C. J., and JUNELL and PRICE, JJ.

JUNELL, Justice.

This is an appeal from a conviction for the offense of murder. A grand jury indicted Appellant for the murder and aggravated robbery of Ishak Anzelevich; a jury found Appellant guilty of murder; the trial judge assessed punishment at fifty years confinement in the Texas Department of Corrections.

Appellant raises six grounds of error. He complains of the court's charge because it included an instruction on the law of parties but did not include a requested instruction on the law of circumstantial evidence. He also complains of the admission of certain evidence, pointing out what he claims to be hearsay, improper impeachment, and unsworn testimony by the prosecutor. We have considered and overrule all grounds of error. We affirm the judgment of the trial court.

The record before us reveals that the conviction arises out of the following sequence of events in Houston, Texas: The deceased, Ishak Anzelevich, and a companion, Moshe Asis, two Israeli nationals,[1] had dinner with friends at a local restaurant and then the group went to a private club. About 11:00 p.m. Anzelevich and Asis left the club in a borrowed car and soon stopped to pick up two persons they saw standing by the street dressed as females. One of the "girls" had long hair and the other had a ponytail. Anzelevich, the driver, had a conversation with the "girls" and then asked Asis to move to the back seat. One of the "girls," Appellant, got in the front seat with Anzelevich; the other, Carleton (Carla) King, got in the back seat with Asis. Anzelevich drove around for thirty minutes or an hour, ending up in a poor neighborhood. At one point Anzelevich told Asis that he believed their passengers were actually men and offered to pay them for a "show." Asis urged his friend to "leave it alone" and go home. Then, as they were driving slowly through an intersection, Anzelevich screamed and suddenly stopped the car. Appellant opened the front car door and ran. Anzelevich ran after Appellant. King left the back seat and ran after the first two. Asis briefly watched from the car and then joined in the chase. As he neared the others, Asis testified that he "saw two knives in front of me," retreated, and fell in a ditch. Someone held a knife to Asis' neck and demanded payment. Asis relinquished everything he had in his pocket. Asis saw the backs of the two "girls" who had been in the car as they departed and then found his friend Anzelevich lying in a ditch, dead of stab wounds. In addition to Asis' account of the events, the tangible evidence introduced at trial included a piece of a wig shaped into a ponytail, which was found at the murder scene, and items found at Appellant's residence, including a purse containing a knife and an identification card bearing the name "Sheree Lamour" and a photograph of Appellant, a second knife, and female clothing bearing blood and grass stains. A tape recording of a statement made to the police by Appellant was introduced into evidence, as was

---

1. *Asis did not speak English. All of his testimony was elicited in Hebrew through an interpreter. According to Asis, Anzelevich was able* to speak English and served as Asis' interpreter throughout the encounter involved.

Appellant's written confession, in both of which Appellant admitted stabbing Anzelevich. Appellant claimed to have stabbed Anzelevich in defense of King, who, according to Appellant, did not do any of the stabbing but was being attacked by the deceased.

In his first ground of error Appellant argues that the trial court committed reversible error in charging the jury on the law of parties because the evidence against Appellant alone would be sufficient to sustain a conviction for murder. In addition to charging the jury with the law of murder and voluntary manslaughter over Appellant's objection the court charged the jury on the law of parties. Appellant contends that the court's inclusion of the charge on the law of parties was inappropriate because it enlarged his criminal responsibility. In so arguing, Appellant relies on the authority of *McCuin v. State*, 505 S.W.2d 827 (Tex.Cr.App.1974). *McCuin* holds that submission of the law of parties is not required when evidence of the conduct of the defendant on trial is sufficient in and of itself to sustain a conviction. Appellant interprets that holding to *prohibit* such a submission in such circumstances. We do not agree. The *McCuin* court was faced with reviewing a case in which the trial court had submitted an abstract statement of the law of parties and did not apply the law to the facts of the case. That court held that the failure to apply the law to the facts is not reversible error where no submission of the law of parties is required. *McCuin* analyzes two lines of cases dealing with whether a mere abstract charge is sufficient and suggests the following test:

> Where the evidence introduced on the trial of the cause shows the active participation in the offense by two or more persons, the trial court should first remove from consideration the acts and conduct of the non-defendant actor. Then, if the evidence of the conduct of the defendant then on trial would be sufficient, in and of itself to sustain the conviction, no submission of the law of principals is required....
>
> On the other hand, if the evidence introduced on the trial of the cause shows, or raises an issue, that the conduct of the defendant then upon trial is not sufficient, in and of itself, to sustain a conviction, the State's case rests upon the law of principals and is dependent, at least in part, upon the conduct of another. In such a case, the law of principals must be submitted and made applicable to the facts of the case....

505 S.W.2d at 830. Although there is no question raised here as to the content of the submission in the case before us, Appellant directs our attention to the first part of the *McCuin* test and contends that it prohibits a submission on the law of parties in the instant case. Assuming the *McCuin* test is the applicable guideline for determining whether a charge on the law of parties should be submitted, we believe both parts of the test must be considered. While the first part of the test may have permitted the trial court to omit the charge in the instant case, application of the second part of the test justifies the submission of the charge. The evidence introduced at trial included the testimony of Dr. Aurelio Espinola, Assistant Medical Examiner for Harris County, who testified that Anzelevich's death was caused by two stab wounds, one in the chest and one in the back, either of which could have been a fatal wound. Dr. Espinola further testified that the number and location of the wounds suffered by Anzelevich were consistent with two persons having stabbed him. In addition, Asis testified that he saw two persons wielding knives at the time of the attack. In our opinion the evidence raised an issue that Appellant's conduct was not sufficient in and of itself to sustain a conviction; the State's case rested in part upon the conduct of the non-defendant King. Furthermore, the trial court may look to events before, during and after the commission of an offense in order to determine whether an accused was participating as a party to the offense. *Medellin v. State*, 617 S.W.2d 229 (Tex.Cr.App.1981); *Harrington v. State*, 547 S.W.2d 621 (Tex.Cr.App.1977). In our opinion the trial court did not err in including the law of parties in its charge to the jury.

■ Appellant's second ground of error is also based on the court's charge to the jury. He contends that the trial court erred by not submitting to the jury his requested charge on the law of circumstantial evidence because the charge on the law of parties allowed the jury to find Appellant guilty if they found that he aided, directed, or attempted to aid King in the commission of the offense despite the fact that there is no direct evidence of King's commission of the main fact to be proved and all evidence of Appellant's actions is circumstantial with the exception of Appellant's confession that he stabbed Anzelevich. As a general rule, a charge on circumstantial evidence is required when the State's case depends entirely upon circumstantial evidence. *Ransonette v. State*, 550 S.W.2d 36, 43 (Tex.Cr.App.1977). When the State seeks to hold an accused criminally responsible for the acts of another, if there is direct evidence of the offense by another party but only circumstantial evidence of the accused's participation, then the accused is entitled to a charge on circumstantial evidence; when there is direct evidence of the accused's participation in the events leading up to the offense, but only circumstantial evidence of the acts of another for which the accused is being held responsible, then, upon timely request, the accused is entitled to a charge on circumstantial evidence. *LeDuc v. State*, 593 S.W.2d 678, 682 (Tex.Cr.App.1979). However, when the facts proven are in such close relationship to the main fact to be proven as to be the equivalent of direct testimony, a circumstantial evidence charge becomes unnecessary. *Id.; Faulk v. State*, 608 S.W.2d 625 (Tex.Cr.App.1980); *Ales v. State*, 587 S.W.2d 686 (Tex.Cr.App.1979). Even though those cases also involved a defendant's responsibility for another's conduct, in neither *Faulk* nor *LeDuc* was a circumstantial evidence charge required. In *Faulk* and *LeDuc*, as here, there was eyewitness testimony of the conduct of another for which the State sought to hold the accused responsible. Because the facts proved in the instant case are in such close relationship to the main facts sought to be proved, Asis' testimony relating King's conduct and

presence during this episode is in our opinion the equivalent of direct evidence of King's participation in the stabbing and killing of Anzelevich. Therefore, we hold that a charge on the law of circumstantial evidence was not required.

■ In his third ground of error Appellant complains that the trial court erred by allowing into evidence testimony regarding hearsay statements made by the deceased to Asis. Appellant points out as objectionable the following testimony about conversations during the time Anzelevich and Asis were driving around with Appellant and King:

Q. Did you ask [Anzelevich] in Hebrew where you are going?

A. I asked him a few times where are we going, and he said we are going home.

\*     \*     \*     \*     \*     \*

Q. Now, what did [Anzelevich] tell you during the drive? . . .

A. We talked, and I told [Anzelevich] whatever he wanted to do, but I would like to go home. After that he told me that they asked him if [Asis] had any drugs on him.

\*     \*     \*     \*     \*     \*

Q. Going back, [Anzelevich] told you the girls asked him whether or not you had any drugs?

A. Yes.

The record reveals that Asis also testified as follows about conversations during the drive:

Q. When you got to the neighborhood where you saw a change in the neighborhood, did [Anzelevich] say anything to you?

A. Yes, that he thinks it is not women. It is men. . . . [Anzelevich] said they would like to give us a show, but I refused and I said, "Let's go home." [Anzelevich] also offered them money. . . .

Q. So [Anzelevich] told you that they were—that he thought they were men and not women, is that correct?

A. Yes, sir.

Because of the language differences between the participants in the transaction, we are confronted with a situation in which the witness is testifying, in part, about statements made by Appellant and translated by the deceased for the witness' understanding. As for Anzelevich's statements which conveyed to Asis Appellant's and King's questions relating to drugs and putting on a show, that testimony does not, in our opinion, constitute inadmissible hearsay because Asis' report of those out-of-court statements was not offered for the purpose of proving the truth of the content of the statements. Appellant objects to portions of the account of the transaction which, in our opinion, were not prejudicial to Appellant and which merely related to the jury what transpired from the time Asis and Anzelevich picked up Appellant and King until the ride ended in a deadly chase.

A witness untrained in logical analysis must be allowed to tell his story, and so long as he does not stray too far, he is to be allowed in describing a happening which in some aspect is relevant, to describe *all* of the occurrence in the way natural to an ordinary man. Such a narration will almost necessarily include many details, brought into the witness's mind by the associative faculty, which have no bearing upon the ultimate question at stake, but which so long as they are not prejudicial, may well be permitted. . . . Consequently, the bare bones of the transaction are allowed to be clothed with living flesh, and, however immaterial, the time and place of the transaction described, the acts, gestures, statements, and appearance of the participants, and other similar circumstances which went to form the complete picture in the witness's memory are allowed by the trial judges to be recounted. . . . [T]his common-sense latitude of expression permitted to the witness should end whenever in his attempt to fill in the outline of his story he strays into positively forbidden fields to the detriment of one of the parties.

1A Ray, Texas Law of Evidence § 911 (Texas Practice 3d ed. 1980). Because the jury has a right to hear what occurred during the one continuous transaction in which the offense was committed in order to realistically evaluate the evidence, Texas case law permits the introduction of such evidence.[2] *See, e.g., Archer v. State,* 607 S.W.2d 539 (Tex.Cr.App.1980); *Scott v. State,* 471 S.W.2d 379 (Tex.Cr.App.1971); *Trostle v. State,* 588 S.W.2d 925 (Tex.Cr.App.1979). Even if the testimony in regard to Anzelevich's statement that he believed their passengers to be men was admitted erroneously, the error was rendered harmless in light of the fact that other evidence conclusively established that the "girls" were actually males. Asis positively identified Appellant in court as the "woman" who had been in the front seat with Anzelevich, and defense counsel made no objection. Improper admission of evidence does not constitute reversible error if the same facts are proved by other, proper or unchallenged evidence. *Brasfield v. State,* 600 S.W.2d 288 (Tex.Cr.App.1980); *McMahon v. State,* 582 S.W.2d 786 (Tex.Cr.App.1978); *Sherbert v. State,* 531 S.W.2d 636 (Tex.Cr.App.1976).

Appellant's fourth and fifth grounds of error relate to a written statement given to the police by Asis on the date of the offense. The defense introduced the statement into evidence and, on cross examination, used it to impeach the witness' trial testimony. Appellant characterizes (improperly, we think) the State's questioning of Asis in regard to that statement on redirect examination as an impermissible attempt to impeach its own witness. A witness who has been impeached by the admission of a prior inconsistent statement is

---

2. Throughout the case law this type of evidence has been called "res gestae of the arrest and offense." Because the term "res gestae" has been stretched to cover many evidentiary rules, we prefer to avoid using that term. *See: Res Gestae in the Texas Court of Criminal Appeals:* *A Method to their Madness?* 50 TEXAS L.REV. 119 (1971); *Res Gestae; A Synonym for Confusion,* 20 BAYLOR L.REV. 229 (1968); 1A RAY, TEXAS LAW OF EVIDENCE § 911 *et seq.* (Texas Practice 3d ed. 1980).

generally entitled to explain such contradictory statement. *Williams v. State*, 604 S.W.2d 146, 149 (Tex.Cr.App.1980). The record reveals that Asis was allowed to do just what he was entitled to do, i.e., attempt to explain apparent inconsistencies in his statements. Appellant also complains that the trial court erred by not granting a mistrial because the prosecutor stated before the jury that the statement contained a number of errors due to the translations involved. Except in extreme cases where it appears that the evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds, an instruction to disregard will generally cure error. *Id.* at 150. In our opinion the error, if any, was cured by the trial court's prompt instruction to disregard.

We affirm the judgment of the trial court.