## State of Connecticut *v.* Michael Walker
## (13664)

Peters, C. J., Healey, Callahan, Glass and Hull, Js.

Argued December 14, 1989—decision released March 6, 1990

*Brian M. O'Connell,* for the appellant (defendant).

*Rita M. Shair,* deputy assistant state's attorney, with whom were *James E. Thomas,* assistant state's attorney, and, on the brief, *John M. Bailey,* state's attorney, for the appellee (state).

CALLAHAN, J. The defendant, Michael Walker, was charged in a substitute information with murder in violation of General Statutes §§ 53a-54a (a) and 53a-8, conspiracy to commit murder in violation of General Statutes §§ 53a-54a (a) and 53a-48 (a) and assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1)[1] and 53a-8. After a jury trial, he was found guilty of all the charges and was subsequently sentenced by the trial court to an effective term of imprisonment of eighty years.

The defendant claims on appeal that the trial court erred in: (1) denying his motion for a new trial because of the state's delay in disclosing exculpatory evidence;

---

[1] "[General Statutes] Sec. 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

"[General Statutes] Sec. 53a-8. CRIMINAL LIABILITY FOR ACTS OF ANOTHER. A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

"[General Statutes] Sec. 53a-48. CONSPIRACY. RENUNCIATION. (a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

General Statutes § 53a-59 (a) (1) provides: "ASSAULT IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument."

and (2) allowing into evidence the testimony of a witness for the state that she had been threatened. We find no error.

The record discloses that the defendant and Tracey Fisher[2] were arrested in connection with the death of Thomas Dixon and the wounding of Barrington Solomon. The shooting occurred on the evening of May 12, 1987. Dixon and Solomon were seated, conversing on the first floor rear porch of a multiple family dwelling located at 104 Enfield Street in Hartford. The defendant and Fisher approached the dwelling and fired bursts from a .30 caliber automatic or semi-automatic weapon at the men on the porch. The shots killed Dixon instantly and severely wounded Solomon. The shooting was apparently motivated by the defendant's desire to avenge his brother, Robert Walker, who, on a previous occasion, had been shot by Solomon and, as a result, was paralyzed.[3]

At the defendant's trial the state offered Lehman Brown[4] as a witness. Brown testified that he knew the defendant and Fisher and that he had been with them early in the day on May 12, 1987. Thereafter, he said, he had gone to visit a friend, Dion Smith, at her apartment. Brown testified that Smith resided at 98-100 Enfield Street, the premises adjoining 104 Enfield Street where Dixon and Solomon were shot. Brown stated that he had fallen asleep at 98-100 Enfield Street and that upon awakening in the evening he had gone out on a rear porch. While there, he observed the defendant and Fisher come through the back lot behind

---

[2] A motion to sever Fisher's trial from that of the defendant was granted and Fisher and the defendant were tried separately. Fisher was convicted and on appeal to this court his conviction was upheld. See *State* v. *Fisher,* 210 Conn. 619, 556 A.2d 596 (1989).

[3] The defendant's brother Robert was shot by Solomon after Robert shot Solomon six times while Solomon sat in his car on a Hartford street.

[4] Lehman Brown was also known as Landon Brown.

98-100 Enfield Street. Fisher was in possession of an automatic weapon. Brown stated that he then saw Fisher scale a fence between the properties and fire a series of shots at the men on the porch. Fisher then returned to where the defendant was standing and handed him the gun. The defendant then fired a burst from the weapon at the porch. Fisher and the defendant then ran from the scene.

Smith, Brown's friend, did not testify in the state's case-in-chief nor did she testify for the defense. After the defendant had rested his case, however, the state called her as a witness on rebuttal. Smith testified that she had known Brown for approximately two and one-half years. She stated that, although she had been with Brown on May 12, 1987, she had never been with him in or near an apartment at 98-100 Enfield Street in Hartford. Smith was not cross-examined by the defendant.

During the state's closing argument to the jury the prosecuting attorney noted that he had called Smith as a witness because he had a duty to see that the defendant received a fair trial and that he was obligated to produce all the relevant evidence whether it helped or hurt the state's case. He then stated that Smith's testimony indicated that the state's witness, Brown, "was probably not on the porch at 100 Enfield Street on the night in question."[5]

## I

The defendant claims that the trial court erred in denying his motion for a new trial because of the state's failure promptly to disclose Smith's exculpatory testimony prior to calling her as a witness. He argues that the lack of prior disclosure amounted to the suppres-

[5] The state claimed that it had only located Smith the morning of the day that she testified.

sion of exculpatory evidence and deprived him of his right to due process under both the federal and state constitutions.[6]

It is axiomatic that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Brady* v. *Maryland,* 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); *State* v. *Cohane,* 193 Conn. 474, 495, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984). However, " '[e]vidence known to the defendant or his counsel, or that is disclosed, *even if during trial,* is not considered suppressed as that term is used in *Brady. State* v. *Altrui,* 188 Conn. 161, 177, 448 A.2d 837 (1982); *State* v. *Perez,* 181 Conn. 299, 309, 435 A.2d 334 (1980); *State* v. *Grasso,* 172 Conn. 298, 303, 374 A.2d 239 (1977).' *State* v. *Dolphin,* 195 Conn. 444, 455–56, 488 A.2d 812 [cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84] (1985)." (Emphasis added.) *State* v. *Reddick,* 197 Conn. 115, 121, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986).

Here, Smith testified as to her exculpatory knowledge at trial. The defendant, therefore, has no basis for a claim of suppression. He can complain only of the timing of the disclosure. Id.; see *Hudson* v. *Sowders,* 510 F. Sup. 124, 126 (W.D. Ky. 1981), aff'd, 698 F.2d 1220 (6th Cir. 1982). Under such circumstances the defendant bears the burden of proving that he was prej-

---

[6] The defendant in his brief does not articulate any different standard to be applied in this instance to the alleged federal and state constitutional violations. A similar right to due process exists under the state constitution independent of the federal constitution. *State* v. *Cohane,* 193 Conn. 474, 495–96 n.16, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 33 (1984).

udiced by the failure of the state to make Smith's information available to him at an earlier time. *United States v. Stone,* 471 F.2d 170, 173–74 (7th Cir. 1972), cert. denied, 411 U.S. 931, 93 S. Ct. 1898, 36 L. Ed. 2d 391 (1973); *State* v. *Reddick,* supra, 121–22.

The defendant failed, however, to demonstrate in the trial court or this court on appeal how he was specifically prejudiced by not having been furnished information concerning the subject matter of Smith's testimony prior to the time she testified. In his brief he merely asserts that, because he was not informed of Smith's testimony at an earlier time, he was deprived of an opportunity to conduct an adequate investigation or to prepare adequately for cross-examination. He fails to specify, however, in what way the earlier discovery of Smith's testimony would have aided him in the preparation and presentation of his case.[7] Smith appears to have testified about whatever material knowledge she possessed that could have been helpful to the defendant. The defendant, moreover, seems to have reached this same conclusion. There was no request after Smith's direct testimony for a recess to prepare for cross-examination or for a continuance to conduct a further investigation. The defendant, in fact, was apparently satisfied with Smith's testimony because, rather than attempt to improve upon it, he waived completely his opportunity to cross-examine her.

Where there has been an initial disclosure of exculpatory evidence at trial, the appropriate standard to be applied "is whether the disclosure came so late as to prevent the defendant from receiving a fair trial." *United States* v. *McPartlin,* 595 F.2d 1321, 1346 (7th Cir.), cert. denied, 444 U.S. 833, 100 S. Ct. 65, 62 L.

---

[7] The defendant also indicates he was prejudiced because he might have wished to call Smith himself. He does not specify how the exculpatory evidence would have been more effective if elicited by the defense rather than the prosecution.

Ed. 2d 43 (1979); *State* v. *Reddick,* supra, 122; *State* v. *Packard,* 184 Conn. 258, 277, 439 A.2d 983 (1981). After reviewing the record and the defendant's broad, unsubstantiated claims of prejudice in this case, we can only conclude that his prior lack of information concerning the subject matter of Smith's testimony did not prejudice him in any way or deprive him of a fair trial. *State* v. *Reddick,* supra. "On this record, the defendant's claims of prejudice are purely speculative and cannot furnish a basis for the reversal of his conviction." *State* v. *Miner,* 197 Conn. 298, 305, 497 A.2d 382 (1985).

## II

The defendant next claims that the trial court erred by allowing a witness for the state to testify concerning threats directed toward her. At trial, the witness, Nadine Collier, identified the defendant as a man she had seen running from the area of the shooting. On cross-examination, however, she admitted that prior to trial she had given a statement to an investigator for the public defender to the effect that she could not identify the defendant.

On redirect examination, the state, in an effort to explain the discrepancy between Collier's testimony and her statement to the investigator, inquired of Collier whether she had been threatened prior to giving her statement. Collier testified that she had received threatening telephone calls and had been followed. She testified that consequently she was too frightened to tell the truth when she was interviewed by the investigator.[8] None of the threatening behavior was connected by evidence to the defendant. The defendant claims on appeal that because there was no evidence to link him to the threats, Collier's testimony was inad-

[8] Collier testified that at the time she was under the impression that the public defender's investigator was "against" Walker.

missible and its admission into evidence was reversible error. We disagree.

The general rule is that threats against witnesses are not relevant and are thus inadmissible as evidence unless the defendant is linked in some way to the making of the threats. *State* v. *Altrui,* supra, 174; *State* v. *Brokaw,* 181 Conn. 475, 478–79, 436 A.2d 6 (1980); *State* v. *Sorbo,* 174 Conn. 253, 256, 386 A.2d 221 (1978); *State* v. *May,* 587 S.W.2d 331, 336 (Mo. App. 1979); *Commonwealth* v. *Bryant,* 316 Pa. Super. 46, 50, 462 A.2d 785 (1983); *State* v. *Payano,* 528 A.2d 721, 728 (R.I. 1987); 1 F. Wharton, Criminal Evidence (14th Ed. Torcia) § 145; C. McCormick, Evidence (3d Ed.) § 273. The reason for the rule is that evidence of threats against witnesses is generally admissible either on the theory that such conduct is inconsistent with the defendant's claim of innocence or on the theory that the making of such threats evinces a consciousness of guilt. *State* v. *Leecan,* 198 Conn. 517, 534, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986); *State* v. *Brokaw,* supra, 479; *State* v. *Graham,* 13 Conn. App. 554, 565, 538 A.2d 236, cert. denied, 207 Conn. 812, 541 A.2d 1241 (1988); *State* v. *Waterman,* 7 Conn. App. 326, 351, 509 A.2d 518, cert. denied, 200 Conn. 807, 512 A.2d 231 (1986); *State* v. *Payano,* supra, 727–28. Obviously, if the threats cannot be linked to the defendant, evidence of such threats directed toward a witness would be of no probative value for those purposes. *State* v. *Maturo,* 188 Conn. 591, 597, 452 A.2d 642 (1982); *State* v. *Altrui,* supra, 174; *State* v. *Brokaw,* supra.

An exception to the general rule concerning the admissibility of evidence of threats exists, however, where the evidence of threats is offered not to prove the guilt of the accused but rather to explain a witness' prior inconsistent statement. *Washington* v. *State,* 293 Md. 465, 470, 445 A.2d 684 (1982); *Brown* v. *State,* 80

Md. App. 187, 194, 560 A.2d 605 (1989); *Commonwealth* v. *Carr,* 436 Pa. 124, 127–28, 259 A.2d 165 (1969); *Commonwealth* v. *Bryant,* supra, 50–51. "A witness who has been impeached by the admission of a prior inconsistent statement is generally entitled to explain such contradictory statement." *Coleman* v. *State,* 632 S.W.2d 858, 863–64 (Tex. App. 1982); *Braxton* v. *State,* 57 Md. App. 539, 556, 470 A.2d 1327, cert. denied, 300 Md. 88, 475 A.2d 1200 (1984); *Williams* v. *State,* 604 S.W.2d 146, 149 (Tex. App. 1980). "In order to avoid the effect of cross-examination a witness may be asked for reasons for acts or conduct on his part, or for inconsistent statements that have been brought out on cross-examination." *State* v. *May,* supra, 336; *State* v. *Griffin,* 497 S.W.2d 133, 135–36 (Mo. 1973); 98 C.J.S., Witnesses § 421. "The scope and extent of the explanation for the conduct or inconsistent statements is a matter within the discretion of the trial court and we may reverse only upon a finding of abuse of that discretion. *State* v. *Charles,* 525 S.W.2d 360, 363 (Mo. App. 1975)." *State* v. *May,* supra.

"Pursuant to the rule permitting explanations of prior inconsistent statements, it is generally held that evidence of threats to a witness or fear on the part of a witness, in order to explain an inconsistency, is admissible in criminal cases for credibility rehabilitation purposes even if the threats or fear have not been linked to the defendant. E.g., *United States* v. *Holladay,* 566 F.2d 1018 (5th Cir.), cert. denied, 439 U.S. 831, 99 S. Ct. 108, 58 L. Ed. 2d 125 (1978); *United States* v. *Rivera,* 513 F.2d 519 (2d Cir.), cert. denied, 423 U.S. 948, 96 S. Ct. 367, 46 L. Ed. 2d 284 (1975); *United States* v. *Cochran,* 499 F.2d 380 (5th Cir. 1974), cert. denied, 419 U.S. 1124, 95 S. Ct. 810, 42 L. Ed. 2d 825 (1975); *United States* v. *Pritchard,* 458 F.2d 1036, 1039–1040 (7th Cir.), cert. denied, 407 U.S. 911, 92 S.

Ct. 2434, 32 L. Ed. 2d 685 (1972); *United States* v. *Scandifia,* 390 F.2d 244, 251–252 (2d Cir. 1968), vacated and remanded on other grounds, 394 U.S. 310, 89 S. Ct. 1163, 22 L. Ed. 2d 297 (1969); *Benefield* v. *State,* 140 Ga. App. 727, 731, 732, 232 S.E.2d 89 (1976); *State* v. *May,* [supra]; *Commonwealth* v. *Carr,* [supra]; *Villarreal* v. *State,* 576 S.W.2d 51 (Tex. Crim. App. 1978), cert. denied, 444 U.S. 885, 100 S. Ct. 176, 62 L. Ed. 2d 114 (1979)." *Washington* v. *State,* supra, 470; see also *Brown* v. *State,* supra, 608; *Williams* v. *State,* supra, 149.

In this instance, the evidence of threats directed toward Collier was offered and admitted to rehabilitate Collier as a witness and to explain the discrepancy between her trial testimony and her pretrial statement. For that purpose, the evidence of threats was relevant to show Collier's state of mind and was not hearsay because it was not offered for its truth. Its admission lay within the sound discretion of the trial court. *Brown* v. *State,* supra, 608. If the defendant was concerned that the jury might be inclined to consider the threats as evidence of his guilt, an eventuality we consider highly unlikely, he could have requested the trial court to deliver a cautionary instruction. "Having failed to do so, he has no legitimate complaint about the admission of this evidence, clearly relevant to explain the prior inconsistent statement." *Commonwealth* v. *Carr,* supra, 128.

In admitting the testimony of threats directed toward Collier, the trial court did not abuse the broad discretion accorded it concerning the admissibility of evidence. *Dunham* v. *Dunham,* 204 Conn. 303, 324, 528 A.2d 1123 (1987); *State* v. *Williams,* 203 Conn. 159, 183–84, 523 A.2d 1284 (1987); *State* v. *Bunkley,* 202 Conn. 629, 649, 522 A.2d 795 (1987); *State* v. *Miller,* 202 Conn. 463, 482, 522 A.2d 249 (1987); *State* v.

*Parker,* 197 Conn. 595, 601, 500 A.2d 551 (1985); 2 F. Wharton, supra, § 416.[9]

There is no error.

In this opinion the other justices concurred.

---

[9] In *State* v. *Sorbo,* 174 Conn. 253, 386 A.2d 221 (1978), this court, although it did not analyze or cite any law pertaining to the admissibility of unattributed threats to explain a witness' inconsistent statements, did appear to conclude that in a criminal case, threats, unless connected to the defendant, are inadmissible for any purpose. Insofar as *Sorbo* may conflict with this opinion, it is overruled.