## STATE OF CONNECTICUT *v.* ROBERT ARTHUR MORRILL
(12931)

Landau, Heiman and Hennessy, Js.

Argued April 24—officially released August 20, 1996

*Milo J. Altschuler*, special public defender, for the appellant (defendant).

*Frederick W. Fawcett*, assistant state's attorney, with whom, on the brief, were *Donald A. Browne*, state's attorney, and *John C. Smriga*, assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4).[1] The defendant asserts that his conviction is fatally flawed because he was denied a fair trial and due process of law. He claims that the state failed to disclose exculpatory information concerning the identification of the perpetrator until after the state had rested, two and one-half years after the information was known to the police. The defendant also claims that the trial court acted improperly (1) in denying the defendant's motion in limine, thereby permitting lay witnesses to testify as to their opinions that the person depicted in a photograph of the bank robber was the defendant, and (2) in refusing to allow testimony from a New Haven police detective who had identified the photograph of the bank robber as being of a person other than the defendant. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On November 1, 1990, at about 1:55 p.m., a man entered the Madison Avenue branch of the Connecticut National Bank (CNB) in Trumbull and went directly to the platform where the assistant manager was located. The individual was a white male, about five feet, nine or ten inches tall, dressed in a green coverall and wearing dark sunglasses with black frames. The person

---

[1] General Statutes § 53a-134 provides in pertinent part: "(a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ."

pointed a gun at the assistant manager, Linda Heller, and walked her over to the door leading into the tellers' area.

Theresa Rubinsky, a teller at the bank, observed the person enter the bank and noticed the top of a gun sticking out of a plastic bag that the man was carrying as he entered the bank. Rubinsky triggered a device that activated the security camera system so that the cameras took pictures continuously throughout the activity in the bank. The triggering mechanism also activated the silent alarm.

The person told Heller to open the door leading to the rear of the tellers' cages and, when she had complied, instructed all of the employees to lie down on the floor. He handed the bag to Robert Sabia, a teller, and instructed him to go down the line and empty the contents of the tellers' drawers into the bag. He also instructed Sabia not to include any dye pack or bait money.

While the robbery was in progress, Anthony Autuori, a customer, entered the bank to transact business, did not see Heller at her usual station and began to walk back toward the tellers' line. A man came from the rear of the tellers' station, displayed a gun and told him to lie down on the floor because "[it was] a bank robbery."

Sabia put the contents of two of the drawers into the bag and also placed a dye pack or bait money in the bag. Sabia gave the bag to the person with the gun and was then told to lie down on the floor. The people in the bank were told to count to fifty before anyone got up. The perpetrator then left the bank.

Sabia got up from the floor and looked out the window. He observed a big cloud of red smoke. He then saw the perpetrator drive off in a red car but he was not certain as to its make or model. Sabia went outside to where the perpetrator had dropped the money when

the dye pack exploded. He thought that he had given the robber about $13,000.

Two retired members of the Connecticut state police saw a photograph in the newspaper that had been taken during the robbery and recognized the person engaged in the bank robbery as Robert Arthur Morrill, a person who had served with each of them while they were members of the Connecticut state police. Additionally, James Desanty, a member of the Trumbull police department reviewed the photographs taken during the robbery and identified the person committing the robbery as Morrill based on his having known Morrill as a fellow Trumbull police officer. Resident state police officer Richard Connors, who had worked with Morrill in the same state police barracks, had also seen a photograph of the robbery in the Bridgeport Post and identified the person as Morrill. Connors confirmed his identification by observing the photographs from the bank cameras. Morrill was arrested by warrant on December 11, 1990, and charged in a single count with robbery in the first degree.

Thereafter, Sabia, while employed as head teller at the Oxford branch of CNB, recognized Morrill as the perpetrator of the Trumbull bank robbery when Morrill came into the Oxford branch a number of months after the robbery. In addition, Morrill's daughter was shown photographs of the bank robbery and identified the person in the photographs as her father.

In March, 1990, the Derby Savings Bank had commenced a foreclosure action against Morrill's family home. A judgment of foreclosure by sale had entered, and a sale date had been set for November 3, 1990. On October 29, 1990, the attorney representing the bank received a telephone call from Morrill's attorney asking whether the bank would postpone the sale to permit the reinstatement of the mortgage. The attorney was

advised that about $21,000 would be needed to reinstate the mortgage.

On November 1, 1990, the day of the bank robbery, Morrill was employed at Caldor's in Ridgefield. At about 8:15 a.m., he told his supervisor that he had to go to court and left at once. He did not return until the next afternoon at about 4 p.m.

At trial, the defendant produced several witnesses in his defense. Joseph Gregory, a member of the Trumbull police department, testified that he had compared Morrill's appearance with the bank surveillance photographs and had formed an opinion that the person in the photographs was not Morrill. He further testified that he had received a telephone call on November 8, 1990, from a caller who identified the person in the newspaper photograph as a person other than Morrill.

Michelle Morrill, the defendant's daughter, testified that on November 1, 1990, she had loaned her father her car, a red 1988 Nissan Sentra. She further testified that her father was at her place of employment at about 2:10 p.m. on November 1, 1990.

Aida Czelusniak testified that she works with Michelle Morrill at Village Coiffures in Seymour and was working with her on November 1, 1990. She testified that she remembered the defendant's being in the shop on November 1, 1990, between 2 and 2:15 p.m. She said that the defendant came to the beauty shop on November 1, 1990, to borrow money from his daughter.

The defendant testified on his own behalf and asserted that on November 1, 1990, he had reported to the Caldor's store in Ridgefield at about 7 a.m., and had remained there until about 10 a.m. At about 10 a.m., he left Ridgefield to travel to the courthouse in New Haven to respond to a subpoena to testify in a civil action in which he was a witness. He testified that he arrived at

the courthouse between 11 and 11:30 a.m. and discovered that he was in the G.A. courthouse instead of the J.D. courthouse. When he discovered his error he walked to the J.D. courthouse. He claimed that he was unable to find either the parties or the lawyers and that he left the courthouse and started back to Ridgefield. He testified that he stopped for lunch and then went to his daughter's place of employment in Seymour. He claimed to have arrived at the beauty shop between 2 and 2:30 p.m. He further asserted that he had not been in Trumbull on November 1, 1990.

The jury found the defendant guilty as charged, and this appeal follows.

I

As a preliminary matter, the defendant asserts that even if we conclude that his individual claims of trial court impropriety are individually insufficient to require reversal, the cumulative effect of these actions would require reversal because collectively, they would constitute a denial of due process. We note that our law is clearly to the contrary.

"Our Supreme Court has rejected a claim that a group of instructional claims of error, none of which was found to constitute reversible error, should be aggregated to form a separate basis for a claim of a constitutional violation of a right to a fair trial; *State* v. *Tillman*, 220 Conn. 487, 505, 600 A.2d 738 (1991), cert. denied, 505 U.S. 1207, 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992); and also rejected a claim that the cumulative effect of a variety of alleged improprieties should be the basis of a claim of constitutional violation . . . . We also reject as untenable the creation of a new constitutional claim in which the totality of alleged constitutional error is greater than the sum of its parts." (Citation omitted; internal quotation marks omitted.) *State* v. *Reddick*, 33 Conn. App. 311, 338–39, 635 A.2d 848 (1993), cert.

denied, 228 Conn. 924, 638 A.2d 38 (1994). Thus, the defendant's claim of alleged cumulative improprieties is without merit.

The defendant asserts that he was denied a fair trial and due process because of three specific actions of the trial court. We will examine each claim individually.

## A

The defendant first claims that the trial court improperly denied his motion to dismiss when the state made a late disclosure of exculpatory material during the course of the trial. We are unpersuaded.

Certain additional facts are necessary to an understanding of our resolution of this issue. By discovery motion dated February 19, 1991, the defendant sought, inter alia, the production of "[a]ny and all exculpatory information and material." That request was granted pursuant to Practice Book § 741 (1). On June 3, 1993, the defendant filed another motion for discovery, this time seeking production of copies of all police reports concerning the investigation into the robbery of CNB on November 1, 1990, as well as all reports concerning the defendant. The defendant sought production of this material because the state did not intend to call any investigating officers as witnesses and he asserted that the information contained in the reports would allow him to present a more complete defense than if these reports were not available. Moreover, he claimed that he could not receive a fair trial without the reports. The trial court was never called on to rule on the defendant's last motion for production because the prosecutor obtained possession of all the Trumbull police department files relating to the robbery, examined them for pertinent documents and turned over to the defendant a previously undisclosed report from Detective Robert Duva. The report indicated that a New Haven police detective had told Duva that the photograph of the

perpetrator of the bank robbery published in the Bridge-port Post bore a strong resemblance to a known bank robber named John Reed.

On June 4, 1993, the morning following the disclosure by the state of this claimed exculpatory material, the defendant filed a motion to dismiss alleging that the state had suppressed this information, had failed to disclose it in a timely manner and that the defendant's right to a fair trial was irrevocably prejudiced. After hearing argument concerning the defendant's motion to dismiss, the trial court denied the motion, but offered the defendant a continuance to allow him to conduct whatever investigation he deemed appropriate, and, in addition, offered the defendant the right to recall any witness and to engage in any additional cross-examina-tion that the defendant deemed necessary based on his investigation. The defendant declined the trial court's offer, indicating that he did not want a continuance, because he felt that he was entitled to a dismissal of the charges.

In his brief, the defendant, in arguing that the trial court denied the motion improperly, asserts that "[h]e was convicted because he looked just like the person in the photographs." This assertion is not, however, factually accurate. The record reveals that Sabia made an in-court identification of the defendant as the perpe-trator without reference to any photographs and also testified that he had identified the defendant as the perpetrator when the defendant came into the Oxford branch of CNB. Additionally, Rubinsky made an in-court identification of the defendant as the person that perpetrated the robbery based on her observations of him at the time of the occurrence.

It is against this background that we examine the defendant's claim that the trial court improperly denied his motion to dismiss. We begin our analysis by restating

the obligation that rests on the state to produce exculpatory evidence. Under *Brady* v. *Maryland,* 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), "[t]he state is constitutionally obligated to disclose certain information to a defendant. The principles of due process require the prosecution to disclose exculpatory evidence that is material to a defendant's guilt or punishment. . . . In order to prove a *Brady* violation, the defendant must show: (1) that the prosecution suppressed evidence after a request by the defense; (2) that the evidence was favorable to the defense; and (3) that the evidence was material. . . . *State* v. *Rasmussen,* 225 Conn. 55, 90, 621 A.2d 728 (1993)." (Citations omitted; internal quotation marks omitted.) *State* v. *Rogers,* 38 Conn. App. 777, 798, 664 A.2d 291, cert. denied, 235 Conn. 918, 665 A.2d 610 (1995). The defendant's reliance on *Brady* is misplaced. Our Supreme Court has concluded that evidence that is disclosed, even if disclosed during trial, is not suppressed as that term is used in *Brady. State* v. *Walker,* 214 Conn. 122, 126, 571 A.2d 686 (1990). Here, the existence of the evidence and its nature was disclosed during trial and was not suppressed.

"The defendant, therefore, has no basis for a claim of suppression. He can complain only of the timing of the disclosure. . . . [S]ee *Hudson* v. *Sowders* 510 F. Sup. 124, 126 (W.D. Ky. 1981), aff'd, 698 F.2d 1220 (6th Cir. 1982). Under such circumstances the defendant bears the burden of proving that he was prejudiced by the failure of the state to make [the identification] information available to him at an earlier time. *United States* v. *Stone,* 471 F.2d 170, 173–74 (7th Cir. 1972), cert. denied, 411 U.S. 931, 93 S. Ct. 1898, 36 L. Ed. 2d 391 (1973) . . . ." (Citation omitted.) *State* v. *Walker,* supra, 214 Conn. 126–27.

Moreover, the defendant also has failed to establish how he was prejudiced by the late disclosure. The

defendant, both before the trial court, and before this court, asserted that he was prejudiced by virtue of the "suppression" of the statement allegedly made by a New Haven detective to Duva that the photograph in the newspaper bore a strong resemblance to a known bank robber. We again note that this evidence was not suppressed. *State* v. *Walker*, supra, 214 Conn. 126–27. Thus, the burden rested with the defendant to demonstrate that the timing of the disclosure prejudiced him to such an extent as to deprive him of a fair trial. *State* v. *Reddick*, 197 Conn. 115, 122, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986). Other than the defendant's unsupported assertion that he was prejudiced by the late disclosure, and his equally unsupported claim that he might have been able to conduct a proper investigation, the record is devoid of any concrete claim supporting his assertion.

The trial court offered the defendant a continuance so that he could conduct any investigation that he deemed appropriate. There was no indication that the New Haven police detective was unavailable nor was there any showing that Reed was not available. Moreover, when the defendant asserted that, in light of this evidence, he might have conducted a different or more extensive cross-examination, the trial court offered him the opportunity to recall any witness and to conduct additional cross-examination. The defendant declined all such offers asserting that he was entitled to a dismissal of the charges. Additionally, while the defendant attempted to introduce the hearsay testimony of the Trumbull detective who had received the alleged telephone call from the New Haven detective, no evidence was introduced to show the unavailability of the New Haven police detective, nor did the defendant attempt to introduce into evidence a picture of Reed. Thus, the defendant failed to show how he was specifically harmed or prejudiced by the late disclosure of the evi-

dence or that he was deprived of its effective use. See *State* v. *Reddick*, supra, 197 Conn. 122.

We also note that the defendant has failed to satisfy the materiality component of *Brady*. See *State* v. *Rogers*, supra, 38 Conn. 798. In order to establish materiality based on a request for exculpatory material, the defendant must show that the availability of the evidence "might have affected the outcome of the trial. *United States* v. *Agurs*, [427 U.S. 97, 104, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976).]" *State* v. *Maldonado*, 193 Conn. 350, 369, 478 A.2d 581 (1984). In this case, two eyewitnesses made in-court identifications of the defendant as the perpetrator of the robbery based on their observations of the perpetrator at the scene of the crime. Sabia also made a positive out-of-court identification approximately eight months after the robbery, while other witnesses identified the defendant as the perpetrator on the basis of the surveillance photograph published in the newspaper. In addition, the defendant's daughter identified a surveillance photograph of the perpetrator as being of her father. Thus, the defendant's claim that the failure to produce the fact of the telephone call in a more timely fashion affected the outcome of the trial is speculative at best. The mere possibility that an item of evidence that is disclosed late, but nonetheless disclosed during the trial, "*might* have helped the defense or *might* have affected the outcome of the trial . . . does not establish materiality in the constitutional sense." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Shannon*, 212 Conn. 387, 402, 563 A.2d 646, cert. denied, 493 U.S. 980, 110 S. Ct. 510, 107 L. Ed. 2d 512 (1989).

The trial court acted correctly when it denied the defendant's motion to dismiss based on his claim of suppression of exculpatory evidence.

B

The defendant next asserts that the trial court acted incorrectly in denying his motion in limine that sought to exclude testimony to the effect that a surveillance photograph published in the Bridgeport Post appeared to witnesses to be of the defendant. The defendant based his motion on his claim that the witnesses were not competent to testify as identification experts, that such testimony would be more prejudicial than probative and that the testimony would usurp the function of the jury. The state argued at trial that the arrest of the defendant followed telephone calls from these witnesses identifying the photograph as being of the defendant. The trial court denied the motion in limine.

The defendant fails to provide us with any legal analysis for his position, and his brief is devoid of legal authority. See *State* v. *James*, 237 Conn. 390, 396 nn.10, 12, 678 A.2d 1338 (1996). He argues this issue only in the context of his already rejected claim that the cumulative effect of the combination of the trial court's delict denied him a fair trial; *State* v. *Robinson*, 227 Conn. 711, 747, 631 A.2d 288 (1993); but cites no authority to support his claim that the trial court improperly denied the motion in limine itself. "Assignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court. . . ." (Citations omitted; internal quotation marks omitted.) *Hayes* v. *Smith*, 194 Conn. 52, 66 n.12, 480 A.2d 425 (1984). This rule of nonreviewability applies with equal force to constitutional claims;[2] id.; and criminal appeals. See *State* v.

[2] We note, however, that while the defendant claims that the trial court's denial of his motion in limine denied him a fair trial and due process, this claim appears to be an evidentiary claim, not constitutional in nature. It is well established that "[r]obing garden variety claims of [an evidentiary nature] in the majestic garb of constitutional claims does not make such claims constitutional in nature. . . . Evidentiary claims are not of constitutional magnitude . . . ." (Citations omitted; internal quotation marks omit-

*Person*, 20 Conn. App. 115, 130, 564 A.2d 626 (1989), aff'd, 215 Conn. 653, 577 A.2d 1036 (1990), cert. denied, 498 U.S. 1048, 111 S. Ct. 756, 112 L. Ed. 2d 776 (1991).

C

Finally, the defendant asserts that the trial court improperly excluded from evidence the testimony of a New Haven police detective who identified the person in the published surveillance photograph as being Reed, an allegedly known and convicted bank robber.

We find neither legal precedent nor legal analysis to support the bare assertions made by the defendant that the trial court acted incorrectly. The only cases cited by the defendant are those in support of his *Brady* claim. *State* v. *James*, supra, 237 Conn. 396 nn.10, 12.

In addition, the defendant has not attempted to comply with the requirements of Practice Book § 4065 (d) (3).[3] What we have said in the past concerning the responsibility of the parties to comply with the rules of practice applies here. "The defendant has not complied with the requirements of Practice Book 4065 (d) (3).

ted.) *State* v. *Hansen*, 39 Conn. App. 384, 390, 666 A.2d 421, cert. denied, 235 Conn. 928, 667 A.2d 554 (1995).

[3] Practice Book § 4065 (d) (3) provides: "When error is claimed in any other ruling in a court or jury case, the brief or appendix shall include, where appropriate: the pertinent motion or pleading, if it does not appear in the record, as well as any other document which is a part of the file on appeal but is not proper for inclusion in the record; the question or offer of exhibit; the objection and the ground on which it was based; the ground on which the evidence was claimed to be admissible; the answer, if any; the ruling; and any exception. When the basis of the ruling cannot be understood without a knowledge of the evidence or proceeding which preceded or followed the ruling, a brief narrative or verbatim statement of the evidence or proceeding should be made. A verbatim excerpt from the transcript should not be used if a narrative statement will suffice. When the same ruling is repeated, the brief should contain only a single ruling unless the other rulings are further illustrative of the rule which determined the action of the trial court or establish the materiality or harmfulness of the error claimed. The statement of rulings in the brief shall include appropriate references to the page or pages of the transcript."

. . . His brief contains no specific questions, objections, grounds for objections, the claimed ground of admissibility, or evidentiary rulings by the court, that allow for a review of this claim. When raising evidentiary issues on appeal, all briefs should identify clearly what evidence was excluded or admitted, where the trial counsel objected and preserved his rights and why there was error. . . . The mere assertion in a brief that the evidence was improperly excluded, coupled with transcript page references, will not be sufficient . . . . It has long been our strong policy that if evidentiary rulings claimed to be improper are to be reviewed by this court, they must be set forth in the briefs as required and outlined by the rules of practice. . . . " (Citations omitted; internal quotation marks omitted.) *State* v. *Bagley*, 35 Conn. App. 138, 144–45, 644 A.2d 386, cert. denied, 231 Conn. 913, 648 A.2d 157 (1994).

The judgment is affirmed.

In this opinion the other judges concurred.